No. 36,176

CITY OF NEW YORK INSURANCE COMPANY, *Appellant*, v. CLARENCE A. TICE doing business as THE STANDARD DRIVE IT YOURSELF SYSTEM, and ELIZABETH LEE DOWNS, *Appellees.*

(152 P. 2d 836)

Opinion filed November 4, 1944.

*Harry K. Allen,* of Topeka, argued the cause, and *L. M. Ascough,* of Topeka, was on the briefs for the appellant.

*Allen Meyers,* of Topeka, argued the cause, and *G. Clay Baker, Hubert Else* and *Herbert A. Marshall,* all of Topeka, were on the briefs for the appellees.

The opinion of the court was delivered by

HOCH, J.: An insurance company brought action to recover from a third party, an alleged tort-feasor, the amount which it had paid to a policyholder under an automobile policy indemnifying against loss by collision or accident. The policyholder was also joined as a party defendant. A demurrer to the petition was sustained and the plaintiff appeals. The principal question here is whether the insurance company could maintain the action in its own name.

The essential facts, as alleged, may be briefly summarized. Mrs. Downs, a resident of Wichita, delivered her car in Topeka to an employee of Tice, operator of a concern which rented and stored automobiles, to be taken to the garage for storage. En route to the garage the car was involved in a collision and damaged to the extent of $312.62. Mrs. Downs held a policy issued by the City of New York Insurance Company covering the loss except as to fifty dollars excluded under a "$50 deductible clause." The insurance company paid $262.62 to Mrs. Downs, being the full amount of its liability. Subsequent thereto Tice, the garage operator, paid $50 to Mrs. Downs, her loss being thus fully paid. She gave him a receipt which purported to release him fully from any further liability. Tice had been informed by an agent of the insurance company that the company had paid or had agreed to pay the car owner the sum of $262.62 and "would be subrogated to all of the rights of defendant Downs against the defendant Tice and his employee."

The policy contained the following clause:

"9. Subrogation. In the event of any payment under this policy the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instru-

ments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

The release executed by the car owner was without the knowledge or consent of the insurance company.

It was further alleged in the petition:

"Plaintiff states that on May 18, 1943, L. M. Ascough, counsel for plaintiff, by letter duly deposited in the U. S. mail, wrote to the defendant Elizabeth Lee Downs asking her coöperation in collecting the sum paid under the policy in settlement for damages by reason of the collision, from the wrongdoer, and asking if she would be present at the trial; that said defendant in reply to said letter stated she would not be present at the trial; that a copy of said letter and the reply of the defendant Downs thereto is hereto attached, marked exhibit 'B' and made a part of this petition. Plaintiff states that upon the refusal of Elizabeth Lee Downs to coöperate with plaintiff in this action against the defendant Tice and to the end that the rights of all parties concerned might be litigated in one action, and to protect all parties against further litigation, said Elizabeth Lee Downs has been joined as party defendant in this action."

Exhibit "B" is not set out in full in the abstract but from the trial court's memorandum opinion when sustaining the demurrer it appears that the attorney's letter to Mrs. Downs contained this request:

"As I have been requested to file suit for this amount, will you please coöperate by advising me if you will be available for the trial?"

To which she replied:

"I do not quite understand this letter. I will not be present at the trial. If you want further information please write—"

The plaintiff asked judgment against Tice for $262.62 but no relief was asked as against Mrs. Downs.

The trial court sustained a demurrer to the petition upon the grounds that it was not alleged that Mrs. Downs had refused to permit the action to be brought in her name and that in the absence of such a refusal the action could not be brought by the insurance company in its own name. In a memorandum opinion the court said in part:

"The case of *Insurance Company v. Railway Company*, 98 Kan. 344, lays down the general rule that where a loss on an insurance policy exceeds the amount of the insurance, an action against the wrongdoer for the recovery of the part paid by the insurer must be brought in the name of the insured, but that under certain circumstances there are exceptions to that general rule. One of the exceptions is where the insured, after settling with the wrongdoer out of court, arbitrarily refuses to bring the action. In that case the insurance company was permitted to bring the action in its own name, joining the assured as

a defendant because its petition alleged the refusal of the assured to bring the action."

The trial court then called attention to exhibit "B" and said that the correspondence between plaintiff's attorney and Mrs. Downs (as set out, *supra*) did not constitute a request that she bring the action or permit it to be brought in her name, or a refusal on her part to do so. In that interpretation of the letters we agree with the trial court. The petition did not allege such refusal. But we think the issue to be determined here requires consideration of other questions.

In whose name must an action for damages against a tort-feasor be brought? It must be frankly admitted that it is difficult, if not impossible, to harmonize fully all that has been said in the opinions by this court, over the years, upon that question. We purpose here no extensive treatise on the subject. But to the extent called for by the factual situation before us we are reviewing our cases and re-examining the issue.

Appellant relies primarily upon our code provision, G. S. 1935, 60-401, which reads:

*"Every action must be prosecuted in the name of the real party in interest,* except as otherwise provided in section 27 [60-403] but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract." (Italics supplied.)

Appellant says that since, under the allegations of the petition which upon demurrer must be accepted as true, Mrs. Downs, the car owner, has been fully paid—in part by the insurance company and in part by Tice—she no longer has any financial interest in the matter. Why, then, under section 60-401, *supra,* should not the insurance company bring the action as the "real party in interest"?

Appellee answers that an action in its own name by the insurance company involves assignment of a right of action in tort, and that such assignment cannot be recognized under the prohibition contained in the latter part of section 60-401, which reads: "but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract." Appellee further contends that even if the insurance company be held to be subrogated to the rights of the car owner it cannot sue in its own name in the absence of refusal by the car owner to bring the action or permit the use of her name for that purpose.

We first take note of a contention urged by appellant that the lat-

ter part of section 60-401, above quoted, does not lay down any test of assignability; that it simply makes clear that the statute was not intended to make assignable any chose in action which was not theretofore assignable; and that *tort actions which survive* were assignable before section 60-401 was enacted, and are still assignable. Impressive authorities, citing cases from other jurisdictions, are called to our attention which support appellant's view as to the assignability of those tort actions which survive. In view, however, of the conclusion presently to be stated on other matters, it is not necessary to go into that question. We merely observe in passing that whatever force there may be in appellant's argument on the question, it appears that a contrary interpretation of the statute (now section 60-401) was made many years ago in this state in *K. M. Rly. Co. v. Brehm,* 54 Kan. 751, 756, 39 Pac. 690. And it has frequently been said since then that section 60-401 prevents the assignment of a right of action for damages for a tort.

Before examining authorities—and particularly our Kansas cases—it is well to have clearly in mind the precise situation here presented. The insurance company is not here asserting a right derived from an attempted assignment after the accident. It is here as a prior insurer, deriving whatever rights it has under a contract in which it undertook to indemnify the property owner in case of loss or damage. While, as has frequently been said, an insurance policy is not a gambling contract in the usual sense of the term, the insurer does, in consideration of premium paid, assume the risk of loss or damage. The instant policy expressly provided that in case of payment under the policy the insurer would be subrogated to all of the insured's rights of recovery against third persons, and the insured would take all necessary steps to secure such rights. In addition, the insured agreed to do nothing after loss to prejudice the rights of the insurer.

Clearly the situation thus presented is essentially different from that of an attempted assignment to a third party of a right of action after a tort has been committed. Under the common law the assignment of right of action in certain classes of tort was condemned. Champerty was penalized under a public policy which sought to restrain "the traffic of merchandising in quarrels, of huckstering in litigious discord." To what extent the common law rule has been modified by modern statutes we need not consider. It will suffice to say that the reasons in which the ancient doctrine was

rooted have not been considered applicable to indemnity insurance. Distinction between the two kinds of cases is obvious. In one there is an assignment, after loss, to a third party, a volunteer, who was under no obligation to the assignor. In the case of the prior insurer, on the other hand, there had been an assumption of liability which would mature into right of action against the insurer whenever loss should occur. In the case of an attempted assignment after loss the consideration therefor moves from the assignee to the assignor. In the case of the prior insurer the consideration—the premium—moves in the opposite direction, from insured to insurer. The two cases are clearly different, both in their inherent character and in their relation to the public good. Instead, therefore, of disapproving contracts of indemnity against possible future loss, public policy has sanctioned and encouraged them.

There is no need here for lengthy discussion of the doctrine of subrogation. Its essential character is well known. It is a substitution of persons by which another person succeeds to the rights of a creditor, or similar claimant, in relation to the debt or claim. (60 C. J. 694; 50 Am. Jur. 678.) It has frequently been said that it is of two kinds, "legal" and "conventional." The former is grounded in equity and arises by operation of law, which gives to a third person who has been compelled to pay, a remedy as against one who, in justice, ought to pay. Some writers have treated it as in the nature of "an equitable assignment." Ordinarily when the term is used without qualification "legal" subrogation is meant. "Conventional" subrogation is founded upon contract, express or implied. (60 C. J. 694 *et seq.*; 50 Am. Jur. 678 *et seq.*; 8 Couch on Insurance, § 1996, p. 6589; *Kansas City Title and Trust Co. v. Fourth Nat'l Bank,* 135 Kan. 414, 418, 10 P. 2d 896, and authorities there cited.)

We are here dealing with "conventional" subrogation—subrogation by virtue of contract. Whether in the absence of any subrogation agreement in the policy the insurance company would have succeeded to the rights of the insured against the wrongdoer we need not consider.

It is too well settled to require extensive citation of authority that the doctrine of subrogation is applicable to indemnity contracts. The conditions under which the right of subrogation may be invoked clearly exist. (50 Am. Jur. 706, 707; 25 R. C. L. 1372; 60 C. J. 716 *et seq.*) The United States supreme court said, in *Aetna L. Ins. Co. v. Moses,* 287 U. S. 530, 77 L. Ed. 477, that "subrogation is a normal

incident of indemnity insurance." It is true that under certain circumstances the rights of the insurer as against the wrongdoer may be defeated by some act of the insured, but no act of the insured releasing the wrongdoer from liability can defeat the rights of the insurer when such release is given without the knowledge or consent of the insurer, and when the wrongdoer has full knowledge—as in the instant case, under the allegations—as to the insurer's right of subrogation under the contract. (29 Am. Jur. 1006, and cases cited in footnote 14.)

Appellant's right of subrogation under the terms of the policy is clear. Mrs. Downs, the car owner, has no further financial interest in the claim. The general rule, under code provisions similar to ours, is that in such a situation action is properly brought by the subrogee. (Clark on Code Pleading, § 24, p. 109). Where the insured has not been fully reimbursed both the insurer and insured are real parties in interest and the question arises as to the proper party to bring the action. The wrongdoer should not be compelled to defend two actions for the same wrong. Obviously, under such circumstances it is more logical that the action be brought by the insured. It is the insured who has suffered the entire loss, in the first instance, whereas the insurer could in no event establish a claim beyond the amount for which it was liable under the policy. This sound rule was well stated long ago in this state in *Railroad Co. v. Insurance Co.*, 59 Kan. 432, 53 Pac. 459, wherein it was said:

"When insured property has been destroyed or damaged by fire occasioned by the negligent act of another than the owner, and the insurer has paid to the assured the amount of the loss or damage, the former becomes subrogated to the position of the latter, and may maintain an action to recover from the wrongdoer the amount which by his contract he was compelled to pay. This as a rule of equity is so well established that particular cases need not be cited in its support or justification. 4 Joyce on Insurance, § 3574. Wood on Fire Insurance (B. and B. ed.), § 473; Ostrander on Fire Insurance (2d ed.), § 126. . . . When the loss does exceed the amount of the insurance, so that payment under the insurance contract constitutes but a partial satisfaction of the damages sustained, leaving a residue to be made good by the wrongdoer, a question has arisen as to whether the action against the wrongdoer for the recovery of the portion paid by the insurer should be undertaken in the name of the insurer or of the assured. The tendency of the courts seems to be to hold the latter to be the only competent person to bring suit. This upon the theory that an action for damages for a tort is indivisible and cannot be split up. In such cases the assured sustains toward the insurer the relation of trustee, in respect of such portion of the amount recovered as the former under his contract has been compelled to pay." (pp. 433, 434.)

The rule there stated was cited with approval in the case of *Insurance Co. v. Railway Co.*, 98 Kan. 344, 157 Pac. 1187. This is the case upon which the trial court relied in sustaining the demurrer. But in making application of the rule we think the opinion in that case fails to note the real basis of the rule. The basis is that where the insured no longer has a claim he can assert there is no sound reason why the action may not be brought by the insurer, as the real party in interest. This is equally true whether the loss has been fully covered by insurance or partly covered by the insurance and partly by payment by the wrongdoer. The essential fact is that the insured no longer has a financial interest in the outcome. It also follows that in such a situation the consent of the insured to action by the insurer is not necessary.

In *Klingberg v. Atchison, T. & S. F. Rly. Co.*, 137 Kan. 523, 21 P. 2d 405, the rule above stated was again discussed and followed, reading:

"In an action to recover damages for the loss of elevator and warehouse property caused by fire communicated by defendant's railway engine, it was proper for defendant to plead that plaintiff's loss had been fully covered by insurance and that they had collected the full amount thereof, and in consequence that plaintiffs were not the real parties in interest and could not maintain the action; and *held*, that the paragraph alleging facts thus pleaded was erroneously stricken from defendant's answer." (Syl. ¶ 1.)

In the body of the opinion (p. 526) the court cited *Joy Floral Co. et al., v. Norris*, 34 Ga. App. 796, which arose out of facts identical with those here presented, and said:

"In the course of the trial it developed that prior to the commencement of the action plaintiff had received from an insurance company which had insured his automobile for loss caused by collision the full amount of damages he had sustained. It was then held that since plaintiff had no beneficial interest in *the action it could not be maintained unless the petition were amended and the action brought for the use and benefit of the insurer*." (Italics supplied.)

The suggestion was thus made that an alternative to action in the name of the insurer—where the insured has been fully reimbursed—might be an action by the insured "for the use and benefit of the insurer."

We come to Kansas cases upon which appellee relies:

*McCrum v. Corby*, 11 Kan. 464. This case is not helpful. It deals with a transfer of certain notes and mortgages and simply held that under the facts the transferee or assignee took subject to then-existing equities.

*K. M. Rly. Co. v. Brehm,* 54 Kan. 751, 39 Pac. 690. In this case ten persons suffered property damage from fire started by sparks from a railway engine. One of the claimants took assignment from the other claimants and brought action in his own name. His right to bring action for the other nine was denied on the ground that it was based upon "a naked cause of action for a tort, pure and simple," which has been held not assignable, under our code. We have already shown that such assignment, after loss, bears no real analogy to a subrogation clause in an indemnity policy of insurance.

*Hume v. McGinnis,* 156 Kan. 300, 133 P. 2d 162. This was an automobile collision case. As in the one now before us the insured no longer had any claim, the full loss having been paid by the insurance company. The action was brought by the insured *"for the use and benefit of the insurer."* We sanctioned the procedure. But we did not specifically say that the action might not have been brought by the insurer in its own name. The heart of the opinion lies in the conclusion that the wrongdoer had no basis for complaint. It was said:

"It is really no concern of the tort-feasor in whose name the action is brought just so he will not be compelled to pay twice for the same loss. There would be no danger of that, whereas here the action is brought in the name of the insured *for the use and benefit of the insurer.*" (p. 303.) (Italics supplied.)

It is upon *St. Paul Fire & Marine Ins. Co. v. Bender,* 153 Kan. 752, 113 P. 2d 1062, that appellee mainly relies. Paragraph 4 of the syllabus reads:

"One Goodman held an insurance policy issued by plaintiff to protect his automobile against damage. His car was wrecked in a collision with defendant's car, through the fault of the latter. *Plaintiff paid its insurance obligation, and obtained an assignment* of Goodman's claim for damages against defendant. *Held,* that plaintiff could not maintain an action in its own name to recover from defendant the amount it had paid Goodman on its insurance contract." (Italics supplied.)

The opinion must be viewed in the light of the specific issue there raised. Both from the opinion itself and very clearly from the abstract which we have reëxamined it is evident that the insurance company rested its cause of action entirely upon an "assignment" to it by the insured at the time payment was made under the policy following the accident. There was no allegation that the policy contained a subrogation clause. In its petition the plaintiff averred that it did not have the policy and could not set forth its provisions. In the opinion it was said:

"Plaintiff's payment of its insurance liability and the recitals of assignment and of subrogation contained in Goodman's receipt for the payment of the insurance money, conferred no legal right of action on plaintiff to maintain this action in its own name."

Inasmuch as the plaintiff sought recovery solely upon an assignment after loss we treated it as an attempted assignment of an action in tort. No issue as to right of subrogation under a subrogation agreement in a policy was raised or considered in the case.

It is true that in the Bender case, *supra*, it was said:

"In a variety of *ex delicto* cases where a recovery was sought against a wrongdoer, it has been held that the action should be brought in the name of the injured party although he might have been reimbursed in whole or in part by a third party having a lawful interest to protect."

But under any view this statement cannot be regarded as controlling on the wholly different issue here presented. Furthermore, every case cited in connection with the statement was one in which the loss had been *only partially covered*. The reason for requiring action by the *insured* in such cases has already been discussed. (In further support see *Railroad Co. v. Blaker*, 68 Kan. 244, 247, 75 Pac. 71; *Insurance Co. v. Cosgrove*, 85 Kan. 296, 299, 116 Pac. 819; *Smith v. United Warehouse Co.*, 123 Kan. 515, 516, 255 Pac. 1115; *Watson v. Travelers Mutual Cas. Co.*, 146 Kan. 623, 73 P. 2d 64.)

The Bender case, *supra*, was cited in the recent case of *Old Colony Ins. Co. v. Kansas Public Ser. Co.*, 154 Kan. 643, 647, 121 P. 2d 193, but only upon the proposition that an action in tort is not assignable. In the Old Colony case the loss was not covered by the insurance policy. In holding that the insurance company, having no liability, could not bring action as an assignee, we merely followed the well-established rule that "subrogation is not invoked in favor of a mere volunteer."

Such conflict as may appear in the Kansas cases almost wholly disappears under analysis of the facts and precise issues presented. And the purpose of the rules which they announce—as in the case of all rules of law or procedure with any claim to validity—must not be forgotten. That purpose is to promote justice, to give every litigant full opportunity, in an orderly way, to have his cause heard and determined.

In the instant case the insurance company and the alleged tort-feasor are alone interested in the outcome of the action. The insurer's right to recover—if possible—from a tort-feasor is an integral

part of its contract. On such a basis its premiums are calculated. Having discharged its obligation it is certainly now a "real party in interest." The insured has chosen—without the knowledge or consent of the insurer—to give a full release to the wrongdoer. Not only does the insurer have a right to bring the action, without the consent of the insured, but there was nothing improper in joining the car owner also as a party defendant. No relief was asked against the car owner and no judgment against her need be feared in this action. She is upon notice and may appear if she desires to do so. In view of her alleged full release to Tice, knowing that the insurer was entitled, under the policy, to be subrogated to any right of action she had against him, we think she was properly made a party defendant, under G. S. 1935, 60-411, which provides:

"Any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

In conclusion, it seems well—particularly for guidance of the bar —to summarize as definitely as possible. We are here dealing solely with the case of an indemnity insurance policy containing a clause under which the insurer is subrogated—to the extent of its discharged liability—to all of the insured's right of action. Two situations may arise:

1. *Where the loss has not been fully covered by the insurance payment, and the property owner still asserts a claim against the wrongdoer.* In this case both he and the insurer are real parties in interest, but action should be brought by the property owner, who will hold as trustee for the insurer in respect to such part of the amount recovered as the insurer has been compelled to pay under the policy. If, in such a situation, the property owner refuses to bring action, justice requires that the insurer be permitted to bring the action.

2. *Where the loss has been fully covered,* either wholly by insurance or partly by insurance and partly otherwise, or *where the property owner* has fully released the wrongdoer and *no longer asserts a claim.* Having the sole financial interest in recovery the insurer is entitled to bring action in its own name. But it may be said that the insured property owner also has a certain interest in the action in helping fasten responsibility where it belongs. Accordingly, we have also sanctioned, and properly so, action by the insured "for the use and benefit" of the insurer.

Under these rules, splitting of cause of action is avoided and all

parties necessary to determination of the controversy are brought before the court.

It follows from what has been said that the demurrer should have been overruled, and that the judgment must be reversed. It is so ordered.

HARVEY, J., dissents.