227 A.2d 105.

HOSPITAL SERVICE CORPORATION OF RHODE ISLAND *vs.*
THE PENNSYLVANIA INSURANCE COMPANY *et al.*

MARCH 3, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin, Kelleher, JJ.

KELLEHER, J. This action has been certified to us by the superior court pursuant to the provisions of G. L. 1956, §9-24-27, as amended, after it had concluded that a question of "doubt and importance" existed which so affected the merits of the controversy that it ought to be determined by this court before any further proceedings were taken. At issue is the validity of a certain portion of an agreement entered into by the plaintiff Hospital Service Corporation of Rhode Island, better known and hereinafter referred to as Blue Cross, and the defendant Mary Cherlin, hereinafter referred to as the subscriber.

Blue Cross is a nonprofit corporation organized under the pertinent provisions of G. L. 1956, chap. 19 of title 27. By statute, its purpose is to provide to its subscribers a plan of specific hospital care which has been formulated between Blue Cross and certain hospitals. The subscriber to this plan entered into an agreement with Blue Cross. Part VI (h) thereof reads as follows:

> "In the event any hospital service or benefit is provided for, or any payment is made or credit extended to, a subscriber under this agreement, the Corporation shall be subrogated and shall succeed to the subscriber's right of recovery therefor against any person or organization, except insurers on policies of insurance issued to and in the name of the subscriber. The subscriber shall pay over to the Corporation all sums recovered by suit, settlement or otherwise. on account of such hospital service or benefit. The subscriber shall take such action, furnish such information and assistance, and execute such assignments and other instruments as the Corporation may require to facilitate enforcement of its rights hereunder, and shall take no action prejudicing the rights and interests of the Corporation hereunder."

In 1963 the subscriber was injured as the result of the negligence of one Mary McCormick and was hospitalized for some time whereby she incurred a hospital bill in the amount of $605. Blue Cross, thereupon in compliance with its contract, paid the hospital the sum of $521.50 and then notified the alleged tort-feasor and her insurer of this payment and of its subrogation right under the subscription contract. Thereafter the tort-feasor and her insurer entered into a settlement with the subscriber of all her claims whereby the subscriber received a sum of money in excess of the entire hospital bill. Its demand for the reimbursement of money it paid to the hospital not being honored by its subscriber, the tort-feasor or her insurer, Blue Cross commenced this action joining all three as defendants.

Based upon these facts the superior court certified the following questions for our determination:

"1. Is the Hospital Service Corporation of Rhode Island to the extent it has paid out funds in payment of a claim made under its hospitalization contract and arising out of the action of a tortfeasor subrogated in equity or at law to the right of recovery of a subscriber of its hospitalization contract against said tortfeasor?

"2. Must a tortfeasor and his insurance company, after notice of the provisions of the Hospital Service Corporation of Rhode Island contract concerning subrogation and payments made thereunder, recognize said right of subrogation and will either or both of them be liable to the Hospital Service Corporation of Rhode Island if payment in settlement of the tort claim is made by either of them after such notice to the injured party without a release of said subrogation rights?

"3. Does the Hospital Service Corporation of Rhode Island have a right of action in contract or otherwise against its subscriber for sums paid out under its hospitalization contract on subscriber's behalf as set forth in the Bill of Complaint and, if so, to what proportion of the settlement amount?"

In urging an affirmative reply to the questions, plaintiff contends the provisions of Part VI (h) of the subscription agreement entitle it to subrogation rights against defendant tort-feasor and her insurer. All the defendants, however, argue emphatically that this portion of the agreement is unenforceable because it not only permits a purported assignment of a claim for personal injuries but, if approved, would allow a cause in action to be split. The defendant insurer further alleges that even if this provision of the agreement is upheld as the creation of a right of subrogation, it cannot be bound as it is not a party to the agreement which gives this right.

It is well settled and conceded by all the parties hereto that the common law forbids the assignment of one's cause of action to recover for personal injuries. In 1909 this court set forth this precept in *Tyler* v. *Superior Court*, 30 R. I. 107. The court's action was primarily based on the grounds of public policy so that evils of champerty and maintenance would be avoided. It was pointed out that to hold otherwise would permit the pernicious and somewhat profitable practice of allowing a person to purchase these claims with the consequent harrassment and annoyance of others. What we said then is equally applicable today. However, we believe that Part VI (h) of the contract is a provision calling for subrogation. It differs from an assignment of a tort claim in several respects and should be given effect for the purposes for which it was included in this agreement.

Subrogation is either "legal" or "conventional." Legal subrogation has its source in equity and arises by operation of the law. 83 C.J.S., Subrogation, §3, p. 583. Conventional subrogation arises by acts of the parties and rests on contract. 83 C.J.S., Subrogation, §4, p. 586. The plaintiff relies upon both species of this doctrine. It points to Part VI (h) of the subscription agreement as being an example of conventional subrogation and further states as a matter of law it is entitled to invoke the doctrine of legal subrogation.

We, however, will go no further than to declare that plaintiff can be granted relief based on the specific provision of the contract.

In their contention that the disputed portion of the instant agreement is an assignment of a personal injury claim, defendants fail to distinguish the differences which exist between assignment and "conventional" subrogation. Though both are voluntary transfers, an assignment is a transfer of a much more specific nature than is subrogation. Assignment involves dangers of champerty and maintenance. Subrogation does not. Assignment generally involves some consideration moving from the assignee to the assignor. In subrogation the consideration (here being the change made to the subscriber) moves in the opposite direction. It goes from the subrogor to the subrogee. An assignment is made after a loss to a volunteer who was under no obligation to the assignor. Here Blue Cross assumed a liability which matured into a cause of action against it whenever the loss occurs and is not asserting a right derived from an attempted assignment after the mishap. *City of New York Ins. Co.* v. *Tice,* 159 Kan. 176; Kimball and Davis, The Extension of Insurance Subrogation, 60 Mich. L. Rev. 841.

A similar provision has been held to be valid by other courts. In *Michigan Medical Service* v. *Sharpe,* 339 Mich. 574, 577, the contract contained an express stipulation for subrogation. There the court stated: "Enrichment of plaintiff is not unjust if pursuant to the express agreement of the parties, fairly and honestly arrived at before hand. It is neither unjust, unfair nor inequitable to give effect to an agreement which was not induced by mistake, overreaching, fraud or misrepresentation." The court upheld the validity of this provision and allowed the plaintiff to maintain an action at law against the subscriber on the basis of this clause.

Wisconsin has recently approved a subrogation provision

of the Blue Cross contract being offered in that state. *Associated Hospital Service, Inc.* v. *Milwaukee Automobile Mut. Ins. Co.*, 33 Wis. 2d 170, 147 N.W. 2d 225. Whether such a provision is to be enforced has given rise to extensive litigation throughout the land. Some courts have approved its use while others have given it no effect.[1] The courts in New York and Illinois in approving this type of clause pointed either to the contracts involved or to certain other instruments executed by an insured which they said created a trust and thereby produced subrogation. In *Fifield Manor* v. *Finston*, 54 Cal. 2d 632, the California supreme court acknowledged that there were certain differences between an assignment and subrogation but in effect held they were differences without a distinction and refused to give effect to an express subrogation clause. The court pointed out, however, that in California the legislature has enacted an express prohibition against an assignment of claim for personal injuries.

In another California case, *Peller* v. *Liberty Mutual Fire Insurance Co.*, 220 Cal. App. 2d 610, the court said that if it were not for this statute, it might be appropriate in the light of present-day conditions to re-evaluate this common law prohibition.

We in Rhode Island unlike the California court are not confronted with any legislative barrier in this particular area. All of us whether we are at the beginning, in the middle or near the end of this life's journey are apprehensive that an extended period of hospitalization could befall

---

[1]Cases in support of provision: *Davenport* v. *State Farm Mut. Automobile Ins. Co.*, 81 Nev. 361; *Travelers Ins. Co.* v. *Lutz,* 32 Ohio Op. 2d 469; *Miller* v. *Liberty Mut. Fire Ins. Co.*, 48 Misc. 2d 102, 264 N. Y. Supp. 2d 319; *Bernardini* v. *Home & Automobile Ins. Co.*, 64 Ill. App. 2d 465; *Damhesel* v. *Hardware Dealers Mut. Fire Ins. Co.*, 60 Ill. App. 2d 279. For cases to the contrary, see *Harleysville Mut. Ins. Co.* v. *Lea*, 2 Ariz. App. 538, and *Travelers Indemnity Co.* v. *Chumbley*, Mo. App., 394 S. W. 2d 418. For a further discussion of this problem, see Anon. 43 A.L.R. 2d 1167.

us and of the severe financial hardship it might impose. The cost of illness or disability is a matter which concerns each of us no matter what his status in life might be. It is common knowledge that, in the give and take which goes on at a collective bargaining session between an employer and his employees or their representatives, one of the items often included in the agenda of negotiations is the Blue Cross contract. We have come a long way since the ruling in *Tyler* v. *Superior Court, supra*. A plan such as offered by Blue Cross which affords a measurable degree of protection for the medical and financial well-being of its subscribers was unknown when the prohibition against assignment of personal injuries was set forth by this court.

All of us are aware that today Blue Cross serves a most important beneficial, social and economic purpose in our state. The rates charged to its subscribers since the inception of this service have been, as provided by statute, the subject of many extended hearings by the Department of Business Regulation. In fact, it is unquestioned that the inclusion of a subrogation provision as part of the subscription agreement was a suggestion given by a former director of this department at one of the many hearings held by it on the reasonableness of the subscribers' rates.

We can perceive no reason which should inhibit the enforcement of this subrogation provision. To the contrary the contract fosters a type of coverage that in this case provides protection for the injured without creating a windfall for those few who may be greedy or overreaching. It assists subscribers to discharge their legal obligation for the payment of their hospital bills while all the time affording an opportunity to both Blue Cross and its subscribers to insure that wrongdoers bear the burdens which have been occasioned by their negligence. It is to be hoped that this policy of recovery from tort-feasors may tend to reduce rates charged the subscribers.

Part VI (h) of the subscription agreement is therefore valid and enforceable by Blue Cross as against its subscriber. It does not follow, however, that Blue Cross can recover here the exact amount of money it paid to the hospital. The sum due it may be less than that amount because of the necessary and reasonable expenses and perhaps attorney's fees all of which it may be proper to allocate in just proportion to the sum recovered by subscriber. The record here does not supply the basis of fact required for such an allocation. It would be inequitable and unjust to require this subscriber to incur expenses for the recovery of money which will inure to the benefit of Blue Cross without allowing her some reimbursement. *General Exchange Ins. Corp.* v. *Driscoll,* 315 Mass. 360; 29 Am. Jur., Insurance §1740, p. 816. The subscriber has no cause to complain about the splitting of a cause of action because her violation of the several covenants contained in the subrogation provision has given to Blue Cross an independent cause of action.

Our consideration of the relationship between Blue Cross and the tort-feasor confronts us with a principle enumerated many times by this court, that a defendant's liability is single and, unless he consents, it may not be rendered joint or divisible by the fact that a subrogee has been partially indemnified. A tort-feasor cannot be compelled against his will to defend two actions for the same wrong. *Ulin* v. *Flanzbaum,* 54 R. I. 345; *Pawtucket & New York Steamship Co.* v. *Nippon Silk Co.,* 53 R. I. 53; *Ferraiole* v. *Lamson Oil Co.,* 49 R. I. 426.

In Rhode Island every action must be brought by the real person in interest. He is the only one who may sue. Under our practice where, as here, there is a subrogation pro tanto, suit with one exception must be commenced by the subrogor. Rule 17 (a) of the rules of civil procedure of the superior court permits an "insurer," who has paid all or part of a loss and thereby becomes subrogated, to institute suit in the name of the "assured." This provision

is, however, of no assistance to Blue Cross which in our opinion is not engaged in the insurance business and is therefore not an "insurer." It is generally agreed that a corporation such as plaintiff which provides hospital care for its subscribers is not part of the insurance industry. 29 Am. Jur., Insurance, §12, p. 440. Our belief is strengthened when we read §27-19-2. By its terms it specifically exempts a non-profit corporation as plaintiff from the operation of any laws regulating insurance companies unless it is specifically included therein. Blue Cross, therefore, could not institute an action in its own name against the tortfeasor to enforce its subrogation rights.

Here, however, we are presented with an unusual situation. It is stipulated by the parties hereto that the tortfeasor and her insurer received notice of the subrogation rights of plaintiff and thereafter entered into a settlement with the subscriber which was in excess of the hospital bill and received her release. We are not called upon here to determine if the contract before us is one of indemnity. If it was, Blue Cross could avail itself, independently of the contractual obligations contained in the instant agreement, of its rights under the doctrine of legal subrogation. By including within the contract a stipulation for subrogation, it matters little in the circumstances of this case whether we classify this particular agreement as one of indemnity or one where plaintiff's primary obligation was to furnish to its subscriber the hospital services which it did. In *Associated Hospital Services, Inc., supra,* the Wisconsin court gave effect to the agreement of the parties and permitted plaintiff to enforce its rights against the tortfeasor's insurer who had ignored its notice of payment and subrogation. Earlier in *Gatzweiler* v. *Milwaukee Electric Ry. & Light Co.,* 136 Wis. 34, this court would not apply legal subrogation to accident insurance in the absence of a contractual provision providing therefor. The court went on to state that though casualty insurance may not be one

of indemnity thereby giving rise to the right of subrogation as against the parties causing the injury, the parties might give it that character by a stipulation to that effect.

Here we will give purpose to the agreement of Blue Cross and its subscribers. Subrogation is a doctrine which should not be unique to the field of suretyship or insurance. It is a restitutionary doctrine created either in law or equity or, as in this case, by contract and should be invoked where applicable to permit Blue Cross to pursue whatever rights it might have against the wrongdoer and her insurer.

Having in mind our past postulations about splitting a cause of action, we think, however, the better rule to be' applied here is that a release procured by a tort-feasor, who is aware that the insurer claims to be subrogated to the rights of its insured, will not constitute a defense to the insurer's action against the wrongdoer to enforce its rights of subrogation. 6 Appleman, Insurance Law and Practice, §4092, p. 580. In *Wolverine Insurance Co.* v. *Klomparens,* 273 Mich. 493, under facts quite similar to the instant cause, the court held that the tort-feasor's action in obtaining the release having full knowledge of the insurer's subrogation rights amounted to a fraud on the insurer. By settling the insured's claim with knowledge of the insurer's interest, the tort-feasor was held to have consented to a separation of the cause of action. These principles which we apply in this case were endorsed in *Calvert Fire Insurance Co.* v. *James,* 236 S. C. 431.

The application of this rule as the court in *Calvert* stated should not be rigid and fixed. It should be invoked consonant with the principles of equity and fair dealing. The right of subrogation may be lost by delay or any conduct by the subrogee which can be construed as a waiver or estoppel. The subrogee may be barred if his subrogor settles with the tort-feasor before payment has been made by the subrogee or if the tort-feasor in good faith and without notice of the subrogee's payment effectuates a settlement

with the subrogor. See also 46 C.J.S., Insurance, §1211, at 179, 29A Am. Jur., Insurance, §1733, p. 810, 6 Appleman, Insurance Law and Practice, §4092, p. 580, and 92 A.L.R. 2d 102.

While it is true that the defendant insurer is liable to Blue Cross, we cannot on the state of this record determine whether its actions in settling the subscriber's claim were within its authority as the tort-feasor's insurer and thereby bind her by its actions. This issue must be resolved in the superior court.

It is apparent from the foregoing opinion that Blue Cross here must make a choice; it cannot pursue both its subscriber and the other defendants. Whatever its action in this regard is of no concern to us in the present posture of this cause. The papers herein with our decision endorsed thereon are returned to the superior court for further proceedings.

*Tillinghast, Collins & Tanner, Nathaniel S. Thayer*, for plaintiff.

*Henry M. Swan* and *Edward Bromage, Jr.*, for The Pennsylvania Insurance Company.

*Aisenberg, Decof & Dworkin, Leonard Decof, Alan T. Dworkin*, for Mary Cherlin.