No. 47,017

APPALACHIAN INSURANCE COMPANY OF PROVIDENCE, *Appellant*, v. JAMES R. BETTS, doing business as JAMES R. BETTS GRAIN COMPANY, and MERCHANTS BONDING COMPANY, *Appellee*.

(518 P. 2d 385)

Opinion filed January 26, 1973.

*J. Edward Barth*, of Bohanon and Barth, of Oklahoma City, Oklahoma, argued the cause, and *Robert J. Lewis, Jr.*, of Lewis, Lewis and Beims, of Atwood, was with him on the brief for the appellant.

No brief was filed or appearance made by appellee.

The opinion of the court was delivered by

FONTRON, J.: This appeal stems from an order of the district court of Rawlins County, Kansas, dismissing the plaintiff's lawsuit for lack of jurisdiction.

In its petition the plaintiff, Appalachian Insurance Company of Providence, to whom we shall refer as Appalachian, alleges that the Commodity Credit Corporation, a federal instrumentality, hereafter sometimes called CCC, entered into a uniform grain storage agreement with the defendant, James R. Betts d/b/a James R. Betts Grain Company, the agreement to be effective July 1, 1969; that under this contract CCC stored approximately 81,858 bushels of wheat in the Betts warehouse at Atwood, Kansas; that upon withdrawing its grain in the spring of 1970, CCC discovered there was a deficiency in the quality and amount of grain amounting in value to $1738.86; that demand was made on Betts for this amount

but the same was not paid; that CCC thereupon demanded payment of said amount from Appalachian which had issued a blanket insurance policy to CCC insuring it against certain risks in connection with the storage of grain; that Appalachian paid CCC the entire amount of its claim and thereby became subrogated under the policy terms to the rights of CCC against Betts; that Appalachian has made claim upon Betts, and his surety, for payment of the claim but that no part thereof has been paid; that both Betts and Merchants Bonding Company, as the surety on Betts' public warehouse bond, are indebted to Appalachian in the sum of $1738.86.

The defendants moved to dismiss the lawsuit on the ground that the district court lacked jurisdiction to entertain the same and cited, in support of their motions, the provisions of Title 15, § 714b of the United States Code, which provides in pertinent part:

"The Corporation—[Commodity Credit Corporation]

. . . . . . . . . . . . . .

"(c) May sue and be sued, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property. The district courts of the United States including the district courts of any Territory or possession, shall have exclusive original jurisdiction without regard to the amount in controversy, of all suits brought by or against the Corporation: *Provided,* That the Corporation may intervene in any court in any suit, action or proceeding in which it has an interest. Any suit against the Corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business. . . ."

In sustaining the defendants' motions to dismiss the action the trial court concluded that inasmuch as Appalachian had acquired its claim through subrogation under the terms of the policy issued to CCC, the jurisdiction to hear and determine the present controversy lay exclusively in the district courts of the United States. In other words, since CCC would have had to sue in federal district court, the trial judge was of the opinion that its subrogee, Appalachian, was required to resort to the same forum.

We believe the trial court was mistaken in the conclusion it reached. If Appalachian, as it is alleged, has fully compensated CCC for its entire loss, CCC no longer has any financial interest in the claim against Betts or in the outcome of this litigation. Our rule has long been that the insurer is the real party in interest when it has fully satisfied the claim of its insured and is thus entitled to maintain an action against the wrongdoer in its own name. (*Railroad Co. v. Insurance Co.,* 59 Kan. 432, 53 Pac. 459;

*Klingberg v. Atchison, T. & S. F. Rly. Co.,* 137 Kan. 523, 21 P. 2d 405; *City of New York Ins. Co. v. Tice,* 159 Kan. 176, 152 P. 2d 836.) Moreover, we have said that where the insured has been wholly paid for its loss, it is no longer the real party in interest and may not maintain an action even for the use and benefit of the insurer. (*Ellis Canning Co. v. International Harvester Co.,* 174 Kan. 357, 255 P. 2d 658; *J. C. Livestock Sales, Inc. v. Schoof,* 208 Kan. 289, 491 P. 2d 560.)

The same rule obtains in federal practice. Rule 17 (*a*), Federal Rules of Civil Procedure, of which our statute is a counterpart, requires that all actions be prosecuted in the name of the real party in interest. The situation before the court in *United States v. Aetna Surety Co.,* 338 U. S. 366, 94 L. Ed. 171, 70 S. Ct. 207, bears much similarity to the situation before us. As to the insurance company's right to maintain the action in its own name, the august court said:

". . . Rule 17 (*a*) of the Federal Rules of Civil Procedure, which were specifically made applicable to Tort Claims litigation, provides that 'Every action shall be prosecuted in the name of the real party in interest,' and of course an insurer-subrogee, who has substantive equitable rights, qualifies as such. If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name. . . ." (pp. 380, 381.)

We harbor no doubt that Appalachian may sue in its own name on the claim to which it has became subrogated. The question is: In what forum? The trial court believed Appalachian had no standing to bring the action in the courts of this state because of the federal statute. (15 U. S. C. § 714b [*c*].) We do not construe that statute as applying to actions brought by or against a subrogee of the Commodity Credit Corporation.

In approaching the question of jurisdiction we are mindful of the principle that United States district courts are courts of limited jurisdiction and that jurisdictional statutes are to be narrowly construed. (*McCord v. Dixie Aviation Corporation,* 450 F. 2d 1129; *Trapp v. Goetz,* 373 F. 2d 380.) In *F & S Construction Company v. Jensen,* 337 F. 2d 160, the court expressed the rule in this way:

". . . Furthermore, statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction. . . ." (p. 161.)

The same rationale was underlined by the United States Supreme Court in *Healy v. Ratta,* 292 U. S. 263, 270, 78 L. Ed. 1248, 54 S. Ct. 700, where it is said:

".  .  . The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. . . . Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [federal] statute has defined."

Appalachian has cited no case where the circumstances exactly parallel those here. Neither have we succeeded in locating an authentic precedent nor, for that matter, any federal statute identical to 15 U. S. C. § 715b (c). However, we find considerable analogy between the position of Appalachian, the subrogee in this case, and the standing of a subrogee in diversity of citizenship litigation. The general rules with respect to diversity actions are set out in 32 Am. Jur. 2d, Federal Practice and Procedure, § 94, pp. 508, 509:

"Generally speaking, one subrogated to the rights of another may stand in the federal courts upon his own citizenship, regardless of the citizenship of the person to whose rights he is subrogated. Thus, where the subrogor and the defendant are from the same state, while the subrogee is a citizen of another state, diversity of citizenship supporting federal jurisdiction is usually held to exist. Furthermore, it has been held that there is diversity of citizenship supporting federal jurisdiction where the subrogee and subrogor are from the same state, but the defendant is from a different state. On the other hand, an action cannot be brought in a federal court by a subrogee against a defendant where both enjoy identical citizenship, even though the subrogor may be a citizen of another state."

In the annotation contained in 6 A. L. R. 2d, Federal Court—Diversity—Subrogation, pp. 137-142, the same legal principles are enunciated. Supporting the proposition that a subrogee is not bound by the citizenship of the subrogor, the author of the annotation cites, among other federal authorities, the case of *Continental Casualty Co. v. Ohio Edison Co.*, 126 F. 2d 423, 426, wherein the court succinctly said:

"One subrogated to the rights of another may stand in the Federal courts upon his own citizenship, regardless of the citizenship of the person to whose rights he is subrogated."

Conversely a subrogee may not exploit the citizenship of his subrogor to invoke federal jurisdiction where both subrogee and defendant are citizens of a common state. (*First Nat. Bank v. Manufacturers Trust Co.*, 2 F. R. D. 125.)

Although a subrogee such as Appalachian may be said, in the eyes of the law, to stand in the same shoes as the party for whom he is substituted and thus he succeeds to the rights which the

subrogor had in the cause of action (see 50 Am. Jur., Subrogation, § 110, pp. 752, 753), we cannot say he is restricted to using the same forum for enforcing his rights as the subrogor (Commodity Credit Corporation) may have been. Adopting this view, which we believe is supported in principle by diversity of citizenship cases, we are forced to the conclusion that the limitation which the federal statute places upon CCC with respect to the forum in which it may sue or be sued does not restrict Appalachian, as the subrogee of CCC, to the same federal forum. We hold that Appalachian, as the real party in interest, is entitled to maintain this action in the courts of this state whether or not the subrogor might have done so.

The judgment is reversed with directions to set aside the order dismissing this action and to proceed with a determination of this matter according to law.