UNITED STATES INVESTMENT AND
DEVELOPMENT CORP. et al.

v.

RHODE ISLAND DEPARTMENT OF
HUMAN SERVICES et al.

No. 91–243–Appeal.

Supreme Court of Rhode Island.

April 28, 1992.

Mark B. Morse, Providence, for plaintiff.

James E. O'Neil, Atty. Gen., Dorothy Fobert, Sp. Asst. Atty. Gen., for defendant.

## OPINION

MURRAY, Justice.

This interpleader action is before the court on appeal by the codefendant Rhode Island Department of Human Services (DHS or the department) from a Superior Court order granting in part the motion for summary judgment of the codefendants Mark B. Morse and Judith McNeil (trustees).

On August 5, 1982, Diona McNeil (Diona), a three-year-old child, sustained serious head injuries in a fall from a retaining wall on premises owned by the United States Investment and Development Corporation. The following year Diona's mother, Judith McNeil, filed suit on behalf of Diona to recover for personal injuries sustained by Diona in the fall. *Judith McNeil and Judith McNeil p.p.a. Diona McNeil v. The United States Investment & Development Corporation,* C.A. No. 83–88. The named defendant, United States Investment and Development Corporation, thereafter counterclaimed against Judith McNeil and commenced a third-party action against the city of Providence (city). This suit ultimately settled, but during preliminary litigation and settlement negotiations Diona incurred considerable medical expenses. To meet these expenses, Judith McNeil applied to DHS for assistance under the Aid to Families with Dependent Children Program. The department subsequently agreed to pay a portion of Diona's care and ultimately provided medical-assistance payments totaling $15,130.19. In exchange for this assistance Judith McNeil executed an Assignment of Collateral Assistance on December 11, 1984 (assignment agreement). The assignment agreement states in pertinent part:

"I, Judith McNeil, in consideration of medical care services and support to be furnished to me by the Department of Social and Rehabilitative Services under the provisions of 40–6–7, 40–6–8 and/or 40–8–4 of the General Laws of Rhode Island which assistance or medical care is necessary by reason of accident, injury or illness sustained on Aug., 1982 * * * *and for which said accident, injury or illness there are monies expected to be paid and provided to me * * * do hereby assign as required by the above-named statutes or programs to the Department of Social and Rehabilitative Services an amount of money equal to the amount of medical care services and support furnished to me under the aforementioned categories of assistance as a result of the said accident, injury or illness.*

"This assignment and agreement shall not operate as a lien against any amounts due me which are in excess of the monies paid by the Department for which medical care services and support were given." (Emphasis added.)

Diona's civil suit was never tried, and on November 4, 1988, the parties reached a court-approved settlement. The written settlement is not part of the record, but both parties represent that the settlement provides Diona with an initial-lump-sum payment of $70,000 and a promise by Sentry Insurance Company (Sentry), the insurer of United States Investment and Development Corporation, to make periodic payments to Diona during the remainder of Diona's life. The initial $70,000 lump sum

was divided between Sentry and the city with Sentry contributing $60,000 and the city contributing the remaining $10,000. The record makes no reference to the intended purpose of the lump-sum payment, but in its brief DHS asserts that the $70,000 was intended to pay all Diona's outstanding medical bills and to pay all Diona's attorneys' fees and litigation expenses. The department bases its assertion on a report concerning the settlement by Diona's court-appointed guardian ad litem. Paragraph 7 of this report states:

> "In addition to the attached structured settlement for the sole benefit of Diona McNeil * * * U.S. Investment & Development Corporation, will pay $60,000.00, and said City of Providence will pay $10,000.00 to Atty. Morse *for his fees and expenses and the medical expenses of said Diona McNeil.*" (Emphasis added.)

The second part of the settlement is a promise by Sentry to make periodic payments to Diona during the remainder of her life. The estimated present value of these payments using current interest rates and actuarial tables is $100,000. Under terms of the settlement Sentry will make payments during Diona's minority to a trust established for Diona's benefit and thereafter make payments directly to Diona. The named trustees of the trust are Mark B. Morse and Judith McNeil.

Shortly after the civil suit was settled Judith McNeil, in her capacity as trustee, disputed DHS's claim to recover the $15,130.19 in medical-assistance benefits provided by DHS to Diona. Sentry and the United States Investment and Development Corporation thereafter filed the instant interpleader action. The named codefendants to the action are Mark B. Morse, Judith McNeil, John Howarth (Diona's father), and DHS. On March 11, 1991, Mark B. Morse and Judith McNeil, as trustees, filed a motion for summary judgment, and on March 19, 1991, DHS filed a motion for summary judgment.

On March 26, 1991, the court heard oral argument on the cross-motions for summary judgment, and on April 19, 1991, the trial justice entered an order granting the trustees' motion for summary judgment insofar as it allowed the trustees to charge DHS a pro rata share of expenses. In the same order the trial justice denied DHS's motion for summary judgment and also denied the trustees' motion for summary judgment with respect to not allowing any recovery by DHS.

The department appeals the Superior Court order granting the trustees' motion for summary judgment that apportioned a pro rata share of expenses to DHS. It maintains that the express terms of the assignment agreement executed by Judith McNeil entitle DHS to recover all the money it advanced on behalf of Diona. In the alternative DHS claims that the doctrine of sovereign immunity operates to bar recovery of a pro rata share of expenses.

■ The trustees argue in their appellee brief that the trial justice erred in denying their motion for summary judgment with respect to not allowing any recovery by DHS. A review of the record, however, shows that the trustees failed to file an appeal. Accordingly the trustees have no standing to challenge the trial justice's order, and the issue is deemed waived. *Aiello Construction, Inc. v. Nationwide Tractor Trailer Training and Placement Corp.*, 122 R.I. 861, 869, 413 A.2d 85, 89 (1980).

In its brief DHS first asserts that the express terms of the assignment agreement entitle DHS to recover the full amount it advanced on behalf of Diona. The department claims that Judith McNeil entered into a contract with DHS assigning to DHS an amount of money equal to the amount of medical care and services provided from money recovered as compensation for Diona's injury. The department claims that the assignment agreement acts as a lien on the settlement in favor of DHS that cannot be reduced by principles of equity. The trustees respond that the assignment agreement is a subrogation of Diona's rights to DHS governed by principles of equity and that under these principles DHS should pay a fair share of expenses. To resolve this issue, we must first determine

whether the assignment agreement is a subrogation of Diona's rights to DHS.

Subrogation is "the substitution of one person in the place of another with reference to a lawful claim or right[,]" and "is a device adopted by equity to compel the ultimate discharge of an obligation by the party who in good conscience ought to pay it." 73 Am.Jur.2d *Subrogation* § 1 (1974). Subrogation is either legal or conventional. *Hospital Service Corp. of Rhode Island v. Pennsylvania Insurance Co.*, 101 R.I. 708, 712, 227 A.2d 105, 109 (1967); *but see Harrington v. Harrington*, 427 A.2d 1314, 1316 n. 3 (R.I.1981) (acknowledging criticism of dichotomy between legal and conventional subrogation). Legal subrogation originates in equity and arises by operation of law. *Hospital Service Corp.*, 101 R.I. at 712, 227 A.2d at 109. In contrast conventional subrogation arises by acts of the parties and is founded on some understanding or agreement, express or implied, that takes effect only by an agreement said to be synonymous with assignment. 73 Am.Jur.2d *Subrogation* § 9. "It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid." *Id.*

Under these principles we find the assignment agreement to be a conventional subrogation of Diona's right to recover in favor of DHS. DHS was under no obligation to pay Diona's medical expenses. The department incurred Diona's debt in exchange for an assignment from any money Diona received as compensation for her injury. This agreement made DHS a substitute for Diona with respect to $15,139.19 from any recovery. The question remains, however, whether Diona could subrogate her right to recover from a personal-injury action.

Historically the common law prevented assignment of a person's cause of action to recover for personal injuries. *Tyler v. Superior Court*, 30 R.I. 107, 73 A. 467 (1909). This rule has since been modified to distinguish conventional subrogation from assignment of tort claims because "[a]ssign-ment involves dangers of champerty and maintenance [and] [s]ubrogation does not." *Hospital Service Corp.*, 101 R.I. at 713, 227 A.2d at 109. The rationale behind this distinction is that assignment generally involves consideration moving from assignee to assignor while subrogation involves consideration moving from subrogor to subrogee. *Id.*

In recognizing that tort claims can be subrogated, we also acknowledge that in certain circumstances "[i]t would be inequitable and unjust to require [a subrogor] to incur expenses for the recovery of money which will inure to the benefit of the [subrogee] without allowing [the subrogor] some reimbursement." *Id.* at 716, 227 A.2d at 111. In the instant case Diona pursued the action and reached a settlement at considerable expense. Under principles of equity Diona should not bear this entire expense if she is not entitled to keep the full amount recovered, and DHS should pay a proportional amount of recovery costs.

In addition to the equity involved, DHS and the state have a practical interest in paying a pro rata share of recovery costs. In some situations an injured party's potential recovery from a tortfeasor is less than, equal to, or only slightly greater than the amount subrogated to the state. This can happen if the tortfeasor's insurance limits and assets are less than the amount advanced by the state. In these situations there is no incentive for the injured party to pursue the action, because the potential recovery from insurance and assets is less than the sum of the amount subrogated to the state and the costs incurred in recovering an award. Consequently the injured party will not pursue the action, and the state receives nothing. If, however, the state agrees to pay a pro rata share of expenses, the subrogor may be induced to pursue a civil action, and the state may recover at least a portion of the amount advanced.

The department's second argument on appeal is that any assessment of a pro rata share of recovery costs against it is a contract claim barred under the doc-

trine of sovereign immunity. As we have previously stated, however, the agreement is a subrogation of Diona's right to recover from the tortfeasor. Subrogation is a restitutionary doctrine founded in equity, *Conaty v. Guaranty Loan Co.*, 62 R.I. 470, 6 A.2d 698 (1939), and no contract is required for subrogation rights to accrue. Accordingly sovereign immunity does not shield the state from assessment of costs under principles of equity, and the state as subrogee can be assessed a pro rata share of the subrogor's recovery costs.

■ A subrogor requesting the court to assess a pro rata share of recovery costs to the subrogee bears the burden of showing that the assessment of a pro rata share is equitable and that the recovery costs are justified. The record before this court does not provide any basis for review of these two requirements. First, there is no substantiation of the considerable fees and expenses charged by Attorney Morse in the litigation and negotiations leading to the settlement. Second, there are troubling questions concerning the equity of assessing DHS a pro rata share of costs, given that DHS was never a party to the litigation, negotiations, or settlement. Furthermore, the $70,000 lump sum provided in the settlement was arguably intended to pay each party's pro rata share of attorney's fees in addition to fully compensating DHS for the $15,139.19 paid on behalf of Diona. If the intent of the lump-sum payment was to meet all these expenses, it is not equitable to further assess DHS a pro rata share of recovery expenses.

Accordingly, for the reasons stated DHS's appeal is denied and dismissed, and the order granting in part the trustees' motion for summary judgment is vacated. The case is remanded to the Superior Court with instructions to conduct further hearings concerning attorney's fees and the equity of assessing DHS a pro rata share of recovery costs.