CONTINENTAL INS. CO. v. WEINSTEIN et al.—267
S. W. (2d) 521.

Middle Section.  June 26, 1953.

Petition for Certiorari denied by Supreme Court, December 11, 1953.

Thos. G. Watkins and Henry C. McCall, Jr., both of Nashville, for complainant.

Elkin Garfinkle, of Nashville, for defendants.

HOWELL, J. This is a suit by the Continental Insurance Company of New York against Paul B. Weinstein and Mrs. Lena Weinstein, doing business under the name of Weinstein & Son, seeking to collect the sum of $2,536.56 and interest, for the loss of some diamonds sent to the defendants on consignment by Alexander Wolf and Leo Wolf, dealers in New York City. The diamonds were turned over by the defendants to the Express Company at Nashville, to be conveyed to the Wolfs in New York and were lost or not delivered. The complainant had insured the diamonds and alleged that it had paid the Wolfs for their loss claiming that by reason of the payment and the terms of the insurance policy issued to the Wolfs it became subrogated to their rights in the transaction.

The defendants filed an answer denying the material allegations of the bill.

The case was heard by the Chancellor who filed a written finding of facts and opinion in which some of the questions raised were decided in favor of the complainant, and then held that the defendants having sent the Wolfs a check for an amount owing by them for diamonds which they kept, and having written in the face of the check "In full settlement of all claims", the complainant could not recover and the bill was dismissed.

The complainant has appealed to this Court and has assigned errors.

Therefore the questions for determination here are: Does the acceptance and receipt of the check for $1,285.25 on the face of which is written "In full settlement of all claims", by the Wolfs, with full knowledge that the check was so sent, amount to a release of the disputed indebtedness and does the complainant Insurance Company have any higher or superior rights than the Wolfs, when the defendants were not informed of the payment of the insurance to the Wolfs at the time of the settlement.

In connection with these questions the Chancellor found the facts as follows:

"After it became apparent that the stones in question were lost by the Railway Express Agency, Wolf & Company wrote the following letter to defendants on January 8, 1948:

" 'Weinstein & Son
237 4th Ave.
Nashville, Tenn.

" 'Gentlemen:

" 'No doubt you are aware of the fact that we have filed a claim with our insurance company for the loss of merchandise you returned to us via American Railway Express with a $50.00 valuation to the Express Company.

" 'However, under the terms and conditions of the policy of insurance we are required to call your attention to the fact that you should at least declared a valuation of not less than 10% to the carrier.

" 'Yours very truly,
" 'A. Wolf.'

" The record does not reveal that a reply was made to this letter and the next letter between the parties was dated January 29, 1948, from attorneys for Wolf & Company to the defendants, which is as follows:

" 'Weinstein & Son
237 4th Avenue
Nashville, Tenn.

" 'Dear Sirs:

" 'On October 30th, November 4th and November 10th, 1947, the firm of Alex. and Leo Wolf of 15 West 47th Street, New York, consigned a total of 750 diamonds under an At Your Risk memorandum. On November 13, 1947, you delivered 182 of these stones of the total value of $2536.56 to the Railway Express Agency in Nashville for return to Alex. and Leo Wolf. You declared a $50.00 value on the shipment. These diamonds were never delivered to the owners and we must, on their behalf, hold you liable therefor under the terms of the memorandum and because of your negligence in declaring a $50.00 value on merchandise valued at $2536.56.

" 'We desire to afford you the opportunity of adjusting this loss amicably, but if we do not hear from you we shall proceed to institute suit for the loss.

" 'Very truly yours,
/s/ Rein, Mount & Cotton.'

" 'JJT:ml

"On the same day the above letter was written, to-wit: January 29, 1948, the complainant, Insurance Company herein, by check bearing the same date and in the amount of $2536.50 paid to Wolf & Company the amount of loss sustained as a result of the Express Agency losing the diamonds, which the defendants had undertaken to return under the consignment agreement. This payment was made pursuant to a proof of loss claim filed with the complainant by the insured dated January 8, 1948, the date of the first above mentioned letter between the consignors and the consignees.

"The defendants, Weinstein, subsequently remitted their check dated February 5, 1948, to Alex and Leo Wolf in the amount of $1285.25, which was the purchase price of the diamonds retained by the Weinsteins. This check contained the notation 'In full settlement of all claims', and it was deposited by Wolf and Company on, or about February 6, 1948.

"The letter hereinabove set out, which was dated January 29, 1948, shows conclusively there was a dispute as to the amount owed by the Weinsteins to Wolf & Company. It is the insistence of the defendants that the acceptance of the check, which was marked as a settlement in full of all claims, constituted a complete release on said defendants' behalf." The Chancellor then disposed of the case as follows:

"The unreported case of H. H. Pike, Co., Inc. v. American Tea & Coffee Co., decided by the Court of Appeals at Nashville, on March 14, 1936, is relied upon by the defendants. The facts of the Pike case are peculiarly similar to the facts of the case at bar.

In holding that the defendants were released, the Court, speaking through Judge DeWitt, states the rule as follows:

" 'The law is well settled in this State and it is in accord with the great weight of authority elsewhere, that when a creditor accepts from his debtor a check containing a statement that it is in full satisfaction of his account, although for less than the amount demanded, it operates as an accord and satisfaction—the compromise being a good consideration, so that a new consideration otherwise is not necessary.'

"The Court goes on to further hold that such a release prevails even though there are several claims in dispute.

"This Court is of the opinion that the above cited case is controlling, and that the acceptance of the check on the part of Wolf & Company constituted a release of any and all claims which the said company had against the Weinsteins.

"The complainant insists that the defendants could not make a settlement which would destroy its right of subrogation. The rule seems to be well settled that notice or knowledge on the part of the third party is necessary in order to prevent such a settlement being made.

" 'Payment by the debtor or assignor, or a compromise or release of the assigned claim by the assignor, before notice of the assignment, will be valid against the assignee.' 5 C. J., Sec. 148, p. 960.

"The rule established in Tennessee in the case of Clodfelter v. Cox, 33 Tenn. 330, 339, with regard to assignment is:

" 'The latter we consider as the more reasonable and safe practical rule, and have accordingly held, on more than one occasion, that the assignment of a chose in action is not complete, so as to vest the title absolutely in the assignee, until notice of the assignment to the debtor; and this not only as regards the debtor, but likewise as to third persons.'

"In the case at bar there is no showing whatsoever that the defendants had any knowledge of a subrogation clause in the insurance policy herein sued upon. No mention is made of subrogation right in the letter of January 29, 1948, from Wolf & Company to the defendants. On the same day a check was drawn by the complainant paying off the Wolf & Company claim. If the Insurance Company had acted promptly and notified the defendants of its subrogation rights, it could have protected its claim. As it was, nothing was done and the defendants sent their check on February 5, 1948, with the notation thereon 'In full settlement of all claims,' to Alex. and Leo Wolf and it was accepted by them."

Thus it appears that there was a dispute between the Wolfs and the defendants as to the amount owing by defendants. The defendants had notified the Wolfs that they would pay for the diamonds retained by them but would not pay for those lost by the Express Company and they sent their check with the endorsement mentioned which was accepted and cashed by the Wolfs.

In Vol. 1 American Jurisprudence 225-226 it is said:

"The creditor to whom a check is sent or other remittance made as payment if full has the option either of accepting it on the conditions on which it is sent, or of rejecting it. When a claim is in dispute,

and the debtor sends to his creditor a check or other remittance which he clearly states is in full payment of the claim, and the creditor accepts the remittance or collects the check without objection it is generally recognized that this constitutes a good accord and satisfaction. The moment the creditor indorses and collects the check, with knowledge that it was offered only upon condition, he thereby agrees to the condition and is estopped from denying such agreement. It is then that the minds of the parties meet and the contract of accord and satisfaction becomes complete. It is not necessary that it be shown that the creditor knows the legal effect of his acceptance of the check, as the mere acceptance will be regarded as assent.''

As to the standing of the complainant Insurance Company under its right of subrogation: It does not appear that the defendants were notified or had any knowledge that the Insurance Company had paid the Wolfs until long after the check had been accepted by the Wolfs.

In the case of Globe & Rutgers Fire Insurance Co. v. Cleveland, 162 Tenn. 83, 34 S. W. (2d) 1059, 1060, the Supreme Court said:

''Upon payment of the loss, the insurer was entitled to the assignment specified in the policy, and by the assignment it acquired the equitable right to share in any recovery Hunter might obtain against the defendant for the property damage, and to use Hunter's name in a suit at law to recover such damages. But it is elementary that the assignment could not confer upon the insurer any greater right or interest against the defendant than the assignor then possessed, no question of fraud or estoppel being involved. And this is true whether the insurer's

rights be treated as arising only from the assignment, or by application of the doctrine of subrogation to the contract of indemnity insurance.

"In Corpus Juris, vol. 26, p. 459 (Fire Insurance, Sec. 623), the rule is stated: 'It is well settled that if the insured settles with or in any way releases the third person from his liability for the loss, before payment thereof by the insurer, the latter's right to acquire subrogation against such person is destroyed. * * *'

"And to the same effect is the text in Ruling Case Law, vol. 14, p. 1404 (Insurance, Sec. 568), from which we quote: 'The insurer is subrogated only to such rights as the insured possessed, and the right of the insurer against the wrongdoer may be defeated by the act of the insured, prior to the loss, or even after the loss, in releasing the wrongdoer from any liability or giving him the benefit of any insurance, or by a recovery of the amount of the loss by the insured, unless, in the case of a release after loss, the wrongdoer settles with the insured with full knowledge of the insurer's right of subrogation.'

"If rights of the insurer are lost or destroyed by reason of a release executed by the insured to the wrongdoer, or as the result of a suit brought by the insured against the wrongdoer, exhausting the cause of action, it is manifest that the remedy of the insurer is against the insured and not against the third party, unless the latter treats with the insured, with knowledge of the insurer's inequitable rights, in such way as to defraud the insurer or to consent to a splitting of the insured's cause of action."

The record discloses also that the Wolfs told the de-

fendants to value the package of returned diamonds at a nominal valuation because they had insurance on them and. this was done when the defendants delivered the diamonds to the Express Company which lost them.

██ ██ We concur with the finding of facts and the Chancellor has reached the fair and equitable solution of the controversy.

The assignments of error are overruled and the decree of the Chancery Court dismissing the bill is affirmed with costs.

Affirmed.

Felts and Hickerson, JJ., concur.