Henry Epstein, J.
The named plaintiff herein was the tenant under a lease. The defendant was the landlord. During the time that the lease was in effect on August 13,1955, certain goods which were stored in the basement were damaged by water, it is alleged, by the negligence of the landlord. The plaintiff was covered by insurance and its claim was paid on or about October 14,1955. On or about June 12,1956, the plaintiff and defendant terminated the lease and in said termination agreement there was a clause releasing the landlord from any and all claims, demands or causes of action whatsoever. There was a similar *904 clause releasing the tenant. After the surrender of the premise» and the signing of the termination agreement, the insurance company pursuant to section 210 of the Civil Practice Act, commenced this action in the name of its assured.
It is the contention of defendant herein that the general release entered into between it as landlord, and the named plaintiff, as tenant, is a complete answer to this cause of action, and, further, that the execution of a loan receipt by the insured had no effect on the legal title to this claim and that, therefore, the insurer is subject to the defense of release as if plaintiff were bringing this action in its own right.
The loan receipt was for an amount equal to the value of the goods damaged. It represented the balance agreed upon "by insurer and insured. The policy of insurance, covering the property damaged, makes no provision for loan receipts as payment for claims. It has been held that where the policy does not authorize the insurer to discharge its liabilities to the insured by a loan, but only by payment, the loan has the legal effect of payment (Rosenfeld v. Continental Bldg. Operating Co., 135 F. Supp. 465, 468, 469; Slater Trucking Co. v. Maus, 273 App. Div. 139). The rights of the insurer as subrogee are here clearly established.
We now come, to the second aspect of this motion. The defendant has attached to its affidavit on this motion a letter to it from plaintiff’s subrogor, dated August 30, 1955, making demand for the amount of water damage and a debit note that was enclosed in said letter. The letter was signed by George T. Fink, Insurance Manager, of tenant. It is not without significance that defendant has chosen to omit as an exhibit the documents referred to in the second paragraph of this same letter. The documents omitted by defendant have been supplied by plaintiff and consist of six sheets of paper itemizing the goods involved in this claim and the value of the merchandise which is a total loss. Each sheet is a ledger type sheet with the printed heading “Underwriters Salvage Company of New York.” Also, on page No. 1 of this exhibit alongside the printed word ‘ ‘ Assured ’ ’ is inserted the name of plaintiff subrogor; likewise on the last sheet the name of plaintiff subrogor is again inserted. In narrative form on the last page, the assured is again referred to and the last paragraph reads as follows: 1 ‘ Receipt of a copy of the inventory by the assured is hereby acknowledged.” At the very end thereof, the name “ Neuss, Hesslein & Co. Inc.” and on the line directly thereunder, the name “R. Markward.”
An earlier letter dated August 15, 1955, addressed to defendant, c/o Cedar Management Oorp., referred to the damage *905 caused by the water and the negligence of defendant. Like the letter of August 30, 1955 this letter was signed by “ George T. Fink ” insurance manager of Neuss, Hesslein & Co. Inc.
The release, which is herein questioned, was executed on June 12, 1956. Ten months had intervened between the earlier letter heretofore referred to and the signing of the release.
It is conceded by defendant’s attorney in his main brief that at the time the release was executed both sides were aware of the damage caused to plaintiff’s stock and that defendant had been notified by plaintiff that said damage was caused by its (defendant’s) negligence.
The following language of the Court of Appeals would appear to dispose of defendant’s argument (Ocean Acc. & Guar. Corp. v. Hooker Electrochemical Co., 240 N. Y. 37, 46): “ Claiming that the release heretofore described operated to defeat plaintiff’s claim for reimbursement founded on subrogation, the motion to dismiss the complaint was made which has been referred to. On that motion affidavits in answer to those filed by defendant were offered by plaintiff which, in our judgment, permitted the court to find at least as a matter of fact that when defendant made its settlement with the trustee of the Wander Company it knew or possessed information which reasonably pursued would have given it knowledge of plaintiff’s status as an insurer of the Wander' Company against claims springing from defendant’s fault and that it had become subrogated to various claims of such a character against the latter.”
Further on, discussing the right of subrogation in the insurer after paying the insured claim and the inability of the insured to cancel or destroy this right, the court continued (p. 47): “It is so well settled as not to require discussion that an insurer who pays claims against the insured for damages caused by the default or wrongdoing of a third party is entitled to be subrogated to the rights which the insured would have had against such third party for its default or wrongdoing. This right of subrogation is based upon principles of equity and natural justice. We recognize at once the fairness of the proposition that an insurer who has been compelled by his contract to pay to or in behalf of the insured claims for damages ought to be reimbursed by the party whose fault has caused such damages and the principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries. Under the circumstances presented in this case the right is in some of its results not different than would be the assignment by the insured of its right of action against the primary wrongdoer for the fault which has caused the damages which have *906 been paid by the insurer. (Hart v. West. R. R. Co., 13 Met. 99.) The subrogee acquires rights which as between it and the insured are beyond the power of cancellation and destruction by the latter and under our practice is entitled to enforce these rights by an action in its own name and without joining the insured as a party. (Lord & Taylor, Inc. v. Yale & Towne Mfg. Co., 230 N. Y. 132.)”
The position of the court is summed up at page 51: “ The situation seems to be quite analogous to that which might arise as between a mortgagor and the assignee of a mortgage either by unrecorded formal assignment or equitable transfer arising through operation of law. If the mortgagor with knowledge of the rights which had thus been acquired by a third party should make a payment to and purported settlement with the mortgagee, of course, it would not be effective as against such transferee and it seems to us that practically the same principles prevent defendant’s settlement with the Wander Company from operating as a settlement and destruction of the independent rights with which plaintiff had become invested. Such protection against such settlement is afforded to the subrogee by various authorities which hold that such an attempted settlement by the primary wrongdoer is a fraud upon the insurer and will not be allowed to stand as a defense to his action. But by whatever term we characterize the operation it seems to us clear that the primary wrongdoer cannot make with the insured a settlement which will deprive of its known rights the insurer who is not a party to the settlement and has made its payments before the settlement. ’ ’
The motion is therefore denied.