[No. 8454-0-III.   Division Three.   April 12, 1988.]

LEADER NATIONAL INSURANCE COMPANY, *Appellant*, v.
ROSANNA V. TORRES, ET AL, *Respondents*.

*Roland L. Skala, Mark A. Kunkler*, and *Weeks, Dietzen
& Skala*, for appellant.

*Harvey Faurholt* and *Horton, Wilkins & Faurholt*, for
respondents.

MUNSON, J.—Leader National Insurance Company
appeals the trial court's summary judgment dismissal of its
claim for subrogation against Rosanna Torres and Olivia
Torres contending (1) the settlement and release between
its insured, Mark G. Maier, and the Torreses did not
destroy its right of subrogation against the Torreses, and
(2) the court erred in failing to consolidate that subrogation
action with the Torreses' counterclaim. We reverse.

The facts are undisputed. On September 4, 1984, Mr. Maier was injured when the vehicle he was driving collided with a vehicle driven by Rosanna Torres and owned by Olivia Torres. He received $10,000, the limits of his personal injury protection (PIP) coverage, from his insurer, Leader. Mr. Maier commenced an action against the Torreses claiming $5,211.10 in "unreimbursed medical expenses," wage loss, and general damages. This sum for unreimbursed medical expenses represented the difference between his total medical expenses of $15,211.10 and the $10,000 payment he received from Leader. The medical expenses were incurred when Mr. Maier had his gallbladder removed shortly after the accident. However, it was disputed whether the surgery was a result of the accident. The Torreses filed a counterclaim for their damages. Leader's attorney, Richard Mathieu, associated with Mr. Maier's attorney, Edward McKinlay, to defend against the counterclaim. Leader moved to amend Mr. Maier's complaint against the Torreses to "include all medical expenses incurred by Maier". The court denied the motion.

In December 1985, the Torreses settled with Mr. Maier and moved for a reasonableness hearing. They had offered to pay $10,000 in full and complete settlement of all Mr. Maier's claims against them. On December 23, a reasonableness hearing was held. Mr. Mathieu, Mr. McKinlay, and the Torreses' attorney, Harvey Faurholt, attended. At the hearing Mr. Faurholt insisted on obtaining a release for all claims against the Torreses, including Leader's subrogation rights. Mr. Mathieu stated Leader would not consent to a release which prejudiced its subrogation rights.

The trial court approved the settlement and release which provided that Mr. Maier would receive $10,000 and release the Torreses, their insurer, and their attorneys from "any and all claims." The counterclaim was not included in the release. There is no allegation the Torreses' assets were depleted.

Leader then commenced an action against the Torreses to recover the $10,000 it had paid Mr. Maier under its PIP

coverage. Leader moved to consolidate the action with the Torreses' counterclaim; the court denied the motion. On May 21, 1986, the court dismissed the Torreses' counterclaim at the conclusion of the presentation of their evidence. On December 22, the court granted the Torreses' motion for summary judgment against Leader determining the settlement and release eliminated Leader's right of subrogation against the Torreses. This appeal followed.

Leader contends Mr. Maier's settlement with the Torreses did not bar its right of subrogation against them. Subrogation is liberally allowed in the interests of justice and depends on the facts and circumstances of each case. *Frontier Ford, Inc. v. Carabba*, 50 Wn. App. 210, 211–12, 747 P.2d 1099 (1987); *Newcomer v. Masini*, 45 Wn. App. 284, 286–89, 724 P.2d 1122 (1986).

In *General Ins. Co. of Am. v. Stoddard Wendle Ford Motors*, 67 Wn.2d 973, 976–77, 410 P.2d 904 (1966), the court, in dicta, stated:

> The right of an insurer, which has paid a loss under its policy, to be subrogated to the rights of the insured (or the loss payee) against a wrongdoer responsible for the loss, is clear. However, subrogation is an equitable right and will be enforced or not according to the dictates of equity and good conscience. It arises independently of contract provision.
>
> There is a substantial body of law developing which indicates that a settlement by a tort–feasor and the insured, with an accompanying release made with the knowledge of the tort–feasor that the insurer has paid that portion of the loss for which it was liable, does not defeat the insurer's claim to subrogation against the tort–feasor. . . .
>
> We are agreed that the trial court properly dismissed the action by General. However, we have serious doubts whether such a compromise settlement between Findley and Stoddard–Wendle, if the latter were a third–party tort–feasor, could enable it to avoid liability to General for the damage. Certainly Stoddard–Wendle knew that General had paid $6,874 for repairs on the truck.

(Citations omitted.)

Less than 1 year later, the court seemed to take a different position. In *Metropolitan Life Ins. Co. v. Ritz,* 70 Wn.2d 317, 422 P.2d 780 (1967), following an accident, the insurer paid the insureds their medical expenses. The insureds executed a reimbursement agreement in which they agreed to repay the insurer the covered medical expenses which might be recovered through legal action or settlement. The insureds settled with the tortfeasor and released all claims. The insurer was not involved in the settlement. The court affirmed the trial court's decision ordering the insureds to reimburse the insurer and explained, in dicta, that the settlement, in effect, deprived the insurer of its subrogation rights against the tortfeasor. *Metropolitan,* at 321. *Accord, State Farm Mut. Auto. Ins. Co. v. Lou,* 36 Wn. App. 838, 678 P.2d 339 (1984). *Cf. Newcomer v. Masini, supra; Lizotte v. Lizotte,* 15 Wn. App. 622, 551 P.2d 137 (1976). *Metropolitan* is distinguishable from the present case because there the insured had a specific reimbursement agreement with the insurer and, thus, the court had to enforce it. Here, there was no such agreement.

Courts in other jurisdictions have held that where the insurer pays a claim to its insured, and the tortfeasor, with knowledge of the payment and right of subrogation, settles with the insured without the consent of the insurer, the insurer's right of subrogation is not defeated by the settlement. The Illinois Supreme Court in *Home Ins. Co. v. Hertz Corp.,* 71 Ill. 2d 210, 213–15, 375 N.E.2d 115, 117–18 (1978) explained the reasoning behind the majority rule:

> The difficulty with the [*Inter Ins. Exch. of Chicago Motor Club v. Andersen,* 331 Ill. App. 250, 73 N.E.2d 12 (1947)][1] rule, in our opinion, is that its application in the circumstances here is fundamentally unfair to both the insured and his insurer. Denied enforcement of its subrogation rights against the real wrongdoer, the insurer must instead seek recovery from its own insured, an obviously unpalatable alternative. Thus the tortfeasor

---

[1] In *Andersen,* the court held the settlement eliminated the insurer's right of subrogation against the tortfeasor.

and his own liability insurer, if any, escape payment for damage caused by the tortfeasor, while the tort victim is effectively denied payment from his own insurance carrier *and* from the tortfeasor. The *Andersen* rule in these circumstances constitutes a trap for the unwary insured plaintiff. While no fraud is alleged here, the rule itself encourages fraud or, at the very least, sharp practice on the part of the tortfeasor or his insurance carrier. The insured may be an unsophisticated, unrepresented party presented with a full and final release which he is told he must sign in order to effect a needed settlement. To require him to execute a release of all claims, even though the tortfeasor has knowledge of the insurer's interest and the probable existence of a standard insurance policy provision obligating the insured to protect the insurer's subrogation rights, is simply not consistent with fair dealing and ought not to be encouraged. In short, adoption of the *Andersen* rule would (1) permit the tortfeasor to escape liability for the amounts paid by the insurer, (2) require the tort victim to go uncompensated as to the amounts paid by the insurer even though he has paid insurance premiums and has also suffered loss at the hands of the tortfeasor defendant, (3) force the insurer to sue his own injured insured, and (4) place a premium on sharp practice and dishonesty. Simply put, the *Andersen* rule produces, in our judgment, an inequitable result and ought not to be applied in the circumstances before us.

. . .

We accordingly hold that an unlimited release executed by an insured–subrogor for consideration not specifically including an amount designated as covering the insurer's subrogation interest does not bar a subsequent subrogation action by an insurer–subrogee against the tortfeasor, if the tortfeasor or his insurance carrier had knowledge of the insurer–subrogee's interest prior to the release.

The Torreses contend it would not be equitable to allow Leader to enforce its right of subrogation because they were aware of Leader's position and asked the court how to obtain a complete release. The court found the settlement reasonable. They maintain the only alternative to the settlement of all the claims without Leader's consent would

have been a trial. However, a trial is always the result when parties cannot reach a settlement. They also assert Leader could have paid Mr. Maier an additional $10,000 and taken over the entire lawsuit. We do not consider this a reasonable alternative for Leader. The Torreses also contend Leader's subrogation rights never came into existence because he was not fully compensated for his injuries. *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 555, 707 P.2d 1319 (1985); *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 219, 588 P.2d 191 (1978). Here, the extent of Mr. Maier's injuries is unknown; whether he was fully compensated will be determined in Leader's subrogation action.

Therefore, we follow the majority rule and hold that an insurer's right of subrogation for the amount paid to its insured is not destroyed when the insured settles with the tortfeasor if (1) the tortfeasor knows of the payment and right of subrogation, (2) the insurer does not consent to the settlement, and (3) the settlement does not exhaust the tortfeasor's assets.[2]

[2]Our research did not reveal any cases which held otherwise, other than several Illinois cases which predated *Home Ins. Co.* The following cases are in accord with *Home Ins. Co.*: *Miller v. Auto–Owners Ins. Co.*, 392 So. 2d 1201 (Ala. Civ. App. 1981); *Sentry Ins. Co. v. Stuart*, 246 Ark. 680, 439 S.W.2d 797 (1969); *Kidd v. Hillman*, 14 Cal. App. 2d 507, 58 P.2d 662 (1936); *Bahn v. Shalev*, 125 A.2d 678 (D.C. 1956); *Pharo v. Travelers Ins. Co.*, 119 Ga. App. 344, 167 S.E.2d 226 (1969); *American Auto. Fire Ins. Co. v. Spieker*, 97 Ind. App. 533, 187 N.E. 355 (1933); *New York Ins. Co. v. Tice*, 159 Kan. 176, 152 P.2d 836 (1944); *Sharp v. Bannon*, 258 S.W.2d 713 (Ky. 1953); *Pennsylvania Fire Ins. Co. v. Harrison*, 94 So. 2d 92 (La. Ct. App. 1957); *Cleaveland v. Chesapeake & Potomac Tel. Co.*, 225 Md. 47, 169 A.2d 446 (1961); *Wolverine Ins. Co. v. Klomparens*, 273 Mich. 493, 263 N.W. 724 (1935); *General Exch. Ins. Corp. v. Young*, 206 S.W.2d 683 (Mo. Ct. App. 1947), *aff'd*, 357 Mo. 1099, 212 S.W.2d 396 (1948); *Omaha & R.V. Ry. v. Granite State Fire Ins. Co.*, 53 Neb. 514, 73 N.W. 950 (1898); *Davenport v. State Farm Mut. Auto. Ins. Co.*, 81 Nev. 361, 404 P.2d 10 (1965); *Melick v. Stanley*, 174 N.J. Super. 271, 416 A.2d 415 (1980), *aff'd*, 181 N.J. Super. 128, 436 A.2d 954 (1981); *United States Fid. & Guar. Co. v. Raton Natural Gas Co.*, 86 N.M. 160, 521 P.2d 122 (1974); *Neuss, Hesslein & Co. v. 380 Canal St. Realty Corp.*, 9 Misc. 2d 903, 168 N.Y.S.2d 579 (1957); *Nationwide Mut. Ins. Co. v. Canada Dry Bottling Co.*, 268 N.C. 503, 151 S.E.2d 14 (1966); *Hartford Accident & Indem. Co. v. Elliott*, 32 Ohio App. 2d 281, 290 N.E.2d 919 (1972); *Aetna Cas. & Sur. Co. v. Associates Transps., Inc.*, 512 P.2d 137 (Okla. 1973); *United Pac. Ins. Co. v. Schetky Equip. Co.*, 217 Or. 422, 342 P.2d 766 (1959); *Hospital Serv. Corp. v. Pennsylvania Ins.*

Leader also contends the court erred in failing to consolidate its subrogation claim with the Torreses' counterclaim. CR 42(a) allows a court to consolidate actions which involve a common question of law or fact. Consolidation is within the discretion of the trial court and will be reversed only upon a showing of abuse and that the moving party was prejudiced. *National Bank v. Equity Investors,* 86 Wn.2d 545, 560–61, 546 P.2d 440 (1976). It is difficult to see how Leader was prejudiced. Even if the court had consolidated Leader's action against the Torreses with their action against Mr. Maier, the court would still have ruled the settlement and release barred Leader's right of subrogation against the Torreses.

The summary judgment is reversed. Both parties shall bear their own attorney fees and costs.

THOMPSON, A.C.J., and GREEN, J., concur.

Reconsideration denied May 12, 1988.

Review granted by Supreme Court September 1, 1988.

Co., 101 R.I. 708, 227 A.2d 105 (1967); *Calvert Fire Ins. Co. v. James,* 236 S.C. 431, 114 S.E.2d 832, 92 A.L.R.2d 97 (1960); *Continental Ins. Co. v. Weinstein,* 37 Tenn. App. 596, 267 S.W.2d 521 (1953); *Landsdowne–Moody Co. v. St. Clair,* 613 S.W.2d 792 (Tex. Civ. App. 1981); *State Farm Mut. Ins. Co. v. Farmers Ins. Exch.,* 27 Utah 2d 166, 493 P.2d 1002 (1972); *Cushman & Rankin Co. v. Boston & M. R.R.,* 82 Vt. 390, 73 A. 1073 (1909); *see also* 16 G. Couch, *Insurance* § 61:201 (2d ed. 1983); 6A J. Appleman, *Insurance* § 4092, at 246 (1972); 44 Am. Jur. 2d *Insurance* § 1811 (1982); Annot., 92 A.L.R.2d 102 (1963); *cf. Prince v. American Indem. Co.,* 431 So. 2d 270 (Fla. Ct. App. 1983) (settlement between insured and tortfeasor is assumed to not include sums for medical expenses paid by insurer); *Preferred Risk Mut. Ins. Co. v. Courtney,* 393 So. 2d 1328 (Miss. 1981) (insurer must receive an assignment from its insured for the amounts paid before it can proceed against the tortfeasor).