# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 21, 2019 Session

## ANTHONY ARRINGTON v. BARBARA BRYANT ET AL.

**Appeal from the Circuit Court for Greene County**
**No. 2017-CV-426    Douglas T. Jenkins, Chancellor[1]**

_____

### No. E2018-02165-COA-R3-CV

_____

This case involves a dispute between siblings, named as co-executors of their mother's estate. Anthony Arrington (plaintiff) brought this action against his sister Barbara Bryant, alleging she engaged in "self-dealing, fraud, theft, and conversion" of the assets of their late mother, Nuffie Arrington (decedent). Ms. Bryant responded by alleging that the parties had mediated their dispute and entered into a settlement agreement disposing of all issues between them. She presented the settlement agreement and two checks she wrote to plaintiff in accordance with the agreement. The plaintiff had cashed the checks. Ms. Bryant asserted the defense of accord and satisfaction. Plaintiff admitted entering into the agreement, but argued that it should be rescinded because of fraudulent inducement and concealment. Ms. Bryant died while the action was pending in the trial court. Her children, Rachel Bryant Ramsey and Nathan Bryant (defendants) were substituted for her. The trial court granted summary judgment for defendants, finding the settlement agreement valid and enforceable. We affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

William S. Nunnally, Greeneville, Tennessee, for the appellant, Anthony Arrington.

Douglas L. Payne, Greeneville, Tennessee, for the appellee, Rachel Bryant Ramsey.

Thomas C. Jessee, Johnson City, Tennessee, and Corey Shipley, Greeneville, Tennessee, for the appellee, Nathan Bryant.

_____

[1]Sitting by interchange.

## OPINION

## I.

Plaintiff's complaint alleges, in pertinent part, as follows. Decedent died testate on May 1, 2015. Her will was admitted to probate; plaintiff and Ms. Bryant were named co-executors. The will devised the estate in equal portions to plaintiff and Ms. Bryant. On March 24, 2016, Ms. Bryant opened an estate account in her name only. She did not tell plaintiff that the estate account was opened only in her name. According to the complaint, Ms. Bryant "withdrew from the account various sums of money to effect repairs on the vacant residence of the decedent and/or for her personal benefit." There was a savings account containing the decedent's funds at First Tennessee Bank. The account jointly bore the names of decedent, plaintiff, and Ms. Bryant. Ms. Bryant alleged that there had been improper expenditures from the savings account, On the day before decedent's death, Ms. Bryant withdrew the entire balance.

Decedent also had a checking account at First Tennessee. Unbeknownst to plaintiff, on October 25, 2011, Ms. Bryant had her name placed on the checking account. Thereafter, Ms. Bryant "used the account for her personal benefit on many occasions" and "engaged in over 400 known acts of self-dealing, fraud, theft and conversion to the detriment of her mother and the plaintiff."

The complaint further states that "on May 2, 2017, prior to . . . any lawsuit being filed, Plaintiff and [Ms. Bryant] attempted mediation and executed a Settlement and Mediation Agreement." Plaintiff alleges that he "was denied information about the savings checking and estate accounts of the decedent at the time of the mediation." Plaintiff, asserting that the settlement agreement should be rescinded, alleges that Ms. Bryant "intentionally concealed from him material facts" and "induced him to enter into an agreement without knowledge of those facts, which he would not have entered into had he had full knowledge of the concealed facts."

Ms. Bryant responded by filing a "motion to dismiss, or, in the alternative, motion for summary judgment," stating, in pertinent part, as follows:

> Through the mediation process the parties reached and executed a Settlement and Mediation Agreement to settle **all** issues between them including, but not limited to, the division of the . . . Estate assets, the division of remaining estate expenses, and all issues related to [Ms. Bryant's] actions,

both as Co-Executor of the estate and as custodian of any funds belonging to [decedent] prior to her death. . . .

In addition to monetary consideration which was promptly paid by [Ms. Bryant] and accepted by Plaintiff pursuant to the Agreement, each party **fully** released the other from any and all claims in relation to [decedent] and her estate.

\* \* \*

The Settlement and Mediation Agreement between the parties constitutes a binding contract for which good and valuable consideration passed, and it further constitutes an accord and satisfaction of all claims of Plaintiff against [Ms. Bryant] including those alleged in the Complaint filed herein.

(Emphasis in original; paragraph numbering in original omitted).

In support of her motion, Ms. Bryant filed her affidavit, wherein she stated that she was required to pay plaintiff $5,000 plus the remaining balance of the estate account, $3,913.53, under the terms of the settlement agreement. She provided copies of two checks in those amounts that she had tendered to plaintiff and that he cashed.

Plaintiff responded with his own affidavit, stating:

[Ms. Bryant] has actively concealed from me necessary and vital factual information, and committed fraud upon my mother in her lifetime and upon me following her death. I want the agreement to be set aside.

With respect to the $5,000.00 she paid to me, I am willing to return it or pay it into the Court, but it can also be used as an offset for future defined damages.

The trial court entered an order dismissing the action, finding and holding as follows:

The parties reached a settlement agreement at the mediation and their agreement was immediately reduced to a writing

-3-

entitled Settlement and Mediation Agreement which was then and there executed by the parties.

The Settlement and Mediation Agreement provided, in pertinent part, that the parties ... "are in dispute over certain accounts of the Estate and of [decedent] prior to her death ..." The Agreement further contained a full and mutual release between the parties. The Plaintiff, Anthony "Tony" Arrington, specifically released the Defendant, Barbara A. Bryant, "of any and all issues arising from the Estate, her actions as an executor for the Estate, her actions as a custodian of funds of the Estate and belonging to [decedent] prior to [decedent's] death, any and all claims he now has, or may have, against Barbara in relation to [decedent], the Estate..."

In executing the Settlement and Mediation Agreement, the parties each acknowledged adequate consideration, and the monetary consideration required under the Agreement was timely paid by [Ms. Bryant] and received by Plaintiff.

The issues raised by Plaintiff in this action, all of which relate to expenditures by [Ms. Bryant] from the accounts of [decedent] before she died as well as from the Estate account, were in dispute and were addressed and negotiated by the parties at mediation as evidenced by the Settlement and Mediation Agreement.

(Ellipses in original; numbering in original omitted.) The trial court held the settlement agreement to be valid and binding on the parties.

Plaintiff filed a motion to alter or amend, arguing that the motion to dismiss should not have been granted. He pointed out that defendants had neither filed a concise statement of material facts as required by Tenn. R. Civ. P. 56.03, nor responded to his discovery requests filed with the complaint. Following a hearing, the trial court entered its final judgment, stating:

the motion to alter and amend is GRANTED to the limited extent that the order of dismissal should be amended to reflect that the court treated the Defendants' motion as one for summary judgment and not as a Rule 12 dismissal for failure

to state a claim; however, the court finds no other error and the motion is, respectfully DENIED in all other respects[.]

(Capitalization in original.) Plaintiff timely filed a notice of appeal.

## II.

The issue presented by plaintiff, as quoted from his brief, is: "Did the trial court err in granting a Rule 56 motion for summary judgment and not allowing the plaintiff to engage in discovery and without there being a concise statement of material facts submitted by the movant?"

## III.

Our standard of review of a grant of summary judgment is as stated by the Supreme Court:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness.

> \* \* \*

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015) (italics in original).

In making the determination of whether summary judgment was correctly granted,

> [w]e must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008); ***Luther v. Compton***, 5 S.W.3d 635, 639 (Tenn. 1999); ***Muhlheim v. Knox Cnty. Bd. of Educ.***, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See **White v. Lawrence***, 975 S.W.2d 525, 529 (Tenn. 1998); ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995).

***Weinert v. City of Sevierville, Tenn.***, No. E2018-00479-COA-R3-CV, 2019 WL 319892, at \*4 (Tenn. Ct. App., filed Jan. 23, 2019) (quoting ***Wells Fargo Bank, N.A. v. Lockett***, No. E2013-02186-COA-R3-CV, 2014 WL 1673745 at \*2 (Tenn. Ct. App., filed Apr. 24, 2014)).

### IV.

### A.

Tenn. R. Civ. P. 56.03 provides as follows:

> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.

The general rule regarding compliance with Rule 56.03 has long been that "a trial court, acting within its discretion, may waive the requirements of the rule in an appropriate situation." ***Owens v. Bristol Motor Speedway, Inc.***, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001); ***Deutsche Bank Nat'l Trust Co. v. Lee***, No. M2018-01479-COA-R3-CV, 2019

WL 2482423, at *3 (Tenn. Ct. App., filed June 13, 2019); ***Cox v. Tenn. Farmers Mut. Ins. Co.***, 297 S.W.3d 237, 244 (Tenn. Ct. App. 2009).

This Court has stated the following about how a trial court should exercise this discretion:

> Although a trial court may waive the requirements of Rule 56.03 in an appropriate case, we caution trial courts that the nonmoving party in a summary judgment proceeding should be sufficiently apprised of the moving party's asserted basis for summary judgment. If the moving party contends that a particular fact is material to the entry of summary judgment in his or her favor, the nonmoving party should not be deprived of the opportunity to show that there is a genuine issue as to the existence of that fact.

***Bobo v. City of Jackson***, 511 S.W.3d 14, 22 (Tenn. Ct. App. 2015) (internal citation omitted).

Cases involving the movant's failure to file a statement of undisputed material facts are relatively rare; more often, the issue presented is the failure of the non-moving party to adequately respond to such a statement. *See, e.g.*, ***Owens***, 77 S.W.3d at 774-75; ***Mise v. Methodist Med. Ctr. of Oak Ridge***, No. E2011-01325-COA-R3-CV, 2012 WL 1392358, at *8, *15 (Tenn. Ct. App., filed Apr. 23, 2012); ***Bobo***, 511 S.W.3d at 22. Nevertheless, this Court has addressed a situation similar to the present case on several occasions. In ***Newell v. Maitland***, No. W2007-01704-COA-R3-CV, 2008 WL 2122331, at *8 (Tenn. Ct. App., filed May 21, 2008), we found "no abuse of discretion in the trial court's decision to grant summary judgment without the benefit of a statement of undisputed facts," stating:

> Plaintiff's sole argument as to why summary judgment was improper is that Deputy Maitland's motion for summary judgment was not accompanied by a statement of undisputed material facts. Our Supreme Court recently emphasized "the importance of attorneys using Rule 56.03 statements of material facts to their fullest," explaining that trial courts and appellate courts should not be required to sift through the record to find any information that is essential to a summary judgment decision. ***Bennett v. Trevecca Nazarene Univ.***, 216 S.W.3d 293, 299, n. 4 (Tenn. 2007). However, a trial

court, acting within its discretion, may waive the requirements of the rule in an appropriate situation.

*Id.* (footnote omitted).

In ***Chambers v. First Volunteer Bank of Tenn.***, No. E2011-00020-COA-R3-CV, 2011 WL 3241836, at \*5 (Tenn. Ct. App., filed July 29, 2011), we were again presented with a case in a similar procedural posture, and affirmed the trial court's dismissal, stating simply as follows:

> This case represents a procedural anomaly of sorts in that we must treat the Bank's motion to dismiss as a motion for summary judgment, yet no statement of undisputed material facts ever was filed. We, therefore, have reviewed the record and determined the material facts that are uncontested by either party.

The ***Newell*** and ***Chambers*** decisions establish that although it is, and should be, rarely done, a trial court's decision to grant summary judgment without the benefit of a statement of undisputed material facts filed by the movant is within the court's discretion.

The same is true regarding the trial court's decision to limit discovery. As a general matter, "[i]t is well settled that decisions with regard to pre-trial discovery matters rest within the sound discretion of the trial court." ***Benton v. Snyder***, 825 S.W.2d 409, 416 (Tenn. 1992). "Because decisions regarding pretrial discovery are inherently discretionary, they are reviewed using the 'abuse of discretion' standard of review." ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010). A similar argument was recently raised by a non-moving party on review of a grant of summary judgment in ***Ismoilov v. Sears Holdings Corp.***, No. M2017-00897-COA-R3-CV, 2018 WL 1956491, at \*13 (Tenn. Ct. App., filed Apr. 25, 2018), wherein this Court stated:

> Because the limited warranty formed the basis for the trial court's grant of summary judgment in favor of SRC, any additional discovery regarding consequential damages and the like was unnecessary. *See, e.g.,* ***Rentea v. Rose***, No. M2006–02076–COA–R3–CV, 2008 WL 1850911, at \*7 (Tenn. Ct. App. Apr. 25, 2008) (noting that trial courts have wide discretion in discovery matters and finding no error in the trial court's decision to stay additional discovery pending determination of summary judgment when the "relevant facts were known to the parties."); ***Burton v. Hardwood Pallets,***

*Inc.*, No. E2001–00547–COA–R3–CV, 2001 WL 1589162, at *6 (Tenn. Ct. App. Dec. 13, 2001) ("[N]o amount of discovery would have changed the subordination agreement and the other relevant facts implicated by the [plaintiffs'] claims, none of which facts are really in dispute."). In the case at bar, Mr. Ismoilov has failed to show that additional discovery would have had any bearing on the summary judgment determination in this case.

As in **Ismoilov** and **Burton**, the trial court in this case had before it the determinative and undisputed facts in this case. They are contained primarily in plaintiff's affidavit, which we will examine at length in the following discussion. As the non-movant's own sworn attestations, no amount of discovery would have changed them.

**B.**

The settlement agreement was drafted by plaintiff's attorney at the time of the mediation.[2] It provides in pertinent part as follows:

> WHEREAS, [Plaintiff and Ms. Bryant] are in dispute over certain expenditures from accounts of the Estate of Nuffie Arrington prior to her death as well as the ownership and management of the property located at 6565 Houston Valley Rd., Greeneville, TN 37743;
>
> WHEREAS, the parties have participated in mediation with the Honorable Thomas Seeley (the "Mediator") on May 2, 2017 and have between them made this Agreement.
>
> \* \* \*
>
> The parties recognize that the Last Will and Testament of Nuffie Arrington is currently under probate administration in Greene County, Tennessee with [plaintiff and Ms. Bryant] appointed as co-executors. . . . They recognize that under said Last Will and Testament, they are to divide all assets of the

---

[2] As plaintiff informed the trial court and states in his appellate brief, subsequently "[a] legal malpractice action [was] filed on behalf of the [p]laintiff against his previous attorney . . . for his failure to effectively and properly represent him," and plaintiff retained new counsel.

Estate between them equally. The parties recognize that the remaining assets of the estate include a bank account at First Tennessee . . . , some personal property of Nuffie Arrington, and the real estate located at 6565 Houston Valley Rd., Greeneville, TN.

\* \* \*

The parties agree that the remainder of the Estate account will be distributed to [plaintiff] and in addition, [Ms. Bryant] will pay $5000 to [plaintiff]. Payment to be made no later than May 12, 2017 to counsel for [plaintiff].

\* \* \*

All parties agree that the consideration received by each is adequate and *in full satisfaction of any and all other rights they may otherwise have had in the assets distributed under the Agreement and against each other for all claims related to Nuffie Arrington whether resulting from the Estate or otherwise.* More specifically:

[Plaintiff] releases [Ms. Bryant] of *any and all issues arising from the Estate, her actions as an executor for the Estate, her actions as a custodian of funds of the Estate and belonging to Nuffie Arrington prior to Nuffie Arrington's death, any and all claims he now has, or may have, against* [*Ms. Bryant*] *in relation to Nuffie Arrington, the Estate, and the property* located at 6565 Houston Valley Rd., Greeneville, TN and this shall be binding upon [plaintiff's] successors, heirs, and assigns.

\* \* \*

The parties expressly acknowledge that each of them has read this Agreement; the terms of the Agreement, and that the significance and effect of this Agreement have been explained to each of them by their respective attorneys.

(Emphasis added; paragraph numbering in original omitted.)

Defendants rely on this settlement agreement, arguing that plaintiff and Ms. Bryant fully settled all of the disputes between them. Plaintiff argued that Ms. Bryant defrauded him and that the agreement should be rescinded. He relied primarily on his affidavit, in which he attested to the following:

On July 22, 2011, [decedent] executed a [d]urable [p]ower of [a]ttorney with healthcare provisions naming Barbara A. Bryant and [plaintiff], as the holders of a [p]ower of [a]ttorney with a provision that we were to act solely by joint action or both of us was required for any act performed pursuant to the [p]ower of [a]ttorney.

Without telling me, [Ms. Bryant] had her name added to our mother's checking account on October 25, 2011, without my participation. I was not aware of this action. She did not add my name to the checking account.

[Ms. Bryant] never shared with me the banking records concerning this account.

*       *       *

Up through and including the time of my mother's death, [Ms. Bryant] provided no information to me about the checking account or deposits, expenditures, or any other information.

After my mother's death, I asked [Ms. Bryant] for information about the checking account and she told me on several occasions she would provide records and information for me, but she never did.

-11-

Before the mediation ... I had obtained none of the checking records. I knew nothing of its contents. Prior to the mediation, [Ms. Bryant] told me that I was not going to be allowed to know anything about it. It was not discussed at the mediation.

Before the mediation, I requested First Tennessee Bank to provide copies of checking records, but I was told they could not do so because my name was not on the checking account.

At the time of the mediation, I knew of no wrongdoing relating to the checking account.

At the time of the mediation, I did know that [Ms. Bryant] purchased a prepaid funeral at the Kiser-Rose Funeral Home for $20.000.00.

She had me go to the funeral home to do this but it did not seem right. It sounded like fraud. I refused to participate because I knew mother already had prepaid for her funeral. After my mother's death, the funeral home refunded [Ms. Bryant] the money and later she emptied the savings account of over $14.000.00. That was half my money.

The savings account was only briefly discussed at the mediation. My attorney and/or his assistant had advised before the mediation that there was nothing left in the account [and] there was nothing I could do about it. The sole focus at mediation was on the Estate account, not the savings account or checking account.

*       *       *

When [Ms. Bryant] and I were appointed Co-Executors, she opened an estate account, but placed only her name on the account. She was the only one who had signatory power to write checks. During the administration of the Estate, she did not disclose to me her activities on the account, and I had no access to the account. At the time of the mediation, I did not

know the details of what she had done and her actions on the account.

I retained William S. Nunnally to represent me in the Order of Protection matters.[3] When I told him what had gone on, he was quickly able to convince the First Tennessee Bank that I was entitled to all of the checking records because I was the Co-Executor of the Estate.

After the mediation was concluded and I retained Mr. Nunnally, I obtained copies of the checking account records from the First Tennessee Bank.

Those records disclose that on approximately 450 occasions, [Ms. Bryant] engaged in transactions that were either self-dealing, self-enrichment, or gifts to her son, daughter-in-law, or grandchild.

From my review of those checking records, it appears that she enriched herself from my mother's proceeds in the amount of $71,314.47 before my mother died. Of that amount, $2,578.14 was the net balance in the checking account at the time of her death.

\* \* \*

Vital information was withheld from me by [Ms. Bryant] and concealed from me at all relevant times until I gathered the information in the summer of 2017 after retaining new counsel.

I would never have entered into a mediation agreement on the terms contained therein if I had known of her wrongful behavior in violation of fiduciary duties to me and to our mother. I did not know then what I know now. She tried to conceal the fraud from me. I was induced by the fraud to enter into a very unfair agreement.

---

[3] Plaintiff alleged in his complaint that Ms. Bryant had improperly taken out several orders of protection against him.

(Footnote added; paragraph numbering in original omitted.)

In support of his fraudulent inducement claim, plaintiff cites *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000), wherein we observed that

> The five elements of an action for fraudulent inducement to contract are: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance.

In this case, accepting all of plaintiff's allegations as true and allowing all reasonable inferences in his favor, his fraudulent inducement claim fails because he has not alleged or established the first element: "a false statement concerning a fact material to the transaction." *Id.* Regarding this element, we have recently stated,

> "Tennessee's courts have declined to confine the concept of fraud to a 'hidebound definition' because fraudulent conduct assumes a variety of forms." *Keith v. Murfreesboro Livestock Market, Inc.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989) (citing *New York Life Ins. Co. v. Nashville Trust Co.*, 292 S.W.2d 749, 754 (Tenn. 1956)) (footnote omitted). At a minimum, the false statement element of a fraudulent inducement claim "must embody a promise of future action without the present intention to carry out the promise." *Keith*, 292 S.W.2d at 754 (citing *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980)). The broad range and flexible scope of fraud thus requires "that each case be considered on its particular facts." *Keith*, 292 S.W.2d at 754. As a result of this attention to the contours and nuances of each individual claim, "it is rare for summary judgment to be appropriate when considering an issue of fraud." *Efird v. Clinic of Plastic and Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 222 (Tenn. Ct. App. 2003).

*Tullahoma Indus., LLC v. Navajo Air, LLC*, No. M2017-00109-COA-R3-CV, 2018 WL 3752305, at *7 (Tenn. Ct. App., filed Aug. 7, 2018). Plaintiff did not allege that Ms. Bryant induced him to enter into the settlement agreement by either making a false

statement, or a promise of future action without the present intention to carry out the promise.

Plaintiff also asserted a fraudulent concealment claim. In Tennessee, "a party may be held liable for damages caused by his failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentations." *Patel v. Bayliff*, 121 S.W.3d 347, 352-53 (Tenn. Ct. App. 2003); *see also* *Robert J. Denley Co. v. Neal Smith Constr. Co.*, No. M2006-00629-COA-R3-CV, 2007 WL 1153121, at *6 (Tenn. Ct. App., filed Apr. 19, 2007) ("Concealment or non-disclosure of facts may also constitute fraud, if the party charged with fraud had knowledge of an existing fact or condition and a duty to disclose the fact or condition."). As reiterated in *Fulmer v. Follis*, No. W2017-02469-COA-R3-CV, 2018 WL 6721248, at *5 (Tenn. Ct. App., filed Dec. 20, 2018):

> "A party commits fraudulent concealment for failing to disclose a known fact or condition where he had a duty to disclose and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Dixon v. Chrisco*, No. M2018-00132-COA-R3-CV, 2018 WL 4275535, at *4 (Tenn. Ct. App. Sept. 7, 2018) (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009) (internal quotation marks omitted). In order to establish a fraudulent concealment claim, a party must show "(1) the defendant had knowledge of a material existing fact or condition, and that (2) the defendant had a duty to disclose the fact or condition." *Id*. (quoting *Pitz*, 2004 WL 2951979, at *8). A fact is material where it is ' "of controlling importance in determining the desirability and value of the residence' that would not be apparent to the buyer through the exercise of ordinary diligence." *Patel*, 121 S.W.3d at 353 (quoting *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947)). "[T]here is no duty to disclose a material fact or condition if it was apparent through 'common observation' or if it would have been discoverable through the exercise of ordinary diligence." *Pitz*, 2004 WL 2951979, at *8 (citing *Simmons*, 206 S.W.2d at 297).

Many of the fraudulent concealment cases in Tennessee arise from allegations of concealed defects in real property passing from seller to buyer. *See* *Fulmer*, 2018 WL 6721248, at *5 (reversing judgment against sellers where "while we agree that there was concealment, there was also an opportunity to discover the fraud through the exercise of

-15-

ordinary diligence and through available relevant information"); **Dixon**, 2018 WL 4275535, at \*6 (affirming judgment against buyers because they "could have easily discovered the extent of the right-of-way by either reading the deeds or obtaining a survey"); **Patel**, 121 S.W.3d at 353 (reversing summary judgment for sellers because "common observation and ordinary diligence did not furnish evidence of prior termite infestation or treatment"); **Pitz**, 2004 WL 2951979, at \*1 (affirming judgment for sellers where "the purchasers' reliance on [sellers'] representations was not reasonable because of the "as is" provision in the contract and because the defects were either apparent or readily discoverable"). In **Golden v. Hood**, the plaintiff sought rescission of a mediated settlement agreement because of alleged fraud and duress; we stated as follows:

> Fundamental principles of contract law are applicable here. Recission of a contract "is not looked upon lightly" and "is available only under the most demanding circumstances." **Robinson v. Brooks**, 577 S.W.2d 207 (Tenn. Ct. App. 1978). Further, the party seeking rescission bears the burden of proof. **Williamson v. Upchurch**, 768 S.W.2d 265 (Tenn. Ct. App. 1988).

> \*    \*    \*

> Plaintiff's allegations of "false assertions" fall within the nature of a claim of fraud or misrepresentation. "In order to constitute fraud or be ground of rescission, there must not only be a representation as to an existing fact but the representation must have been relied upon, and must have been so material that it determined the conduct of the party seeking relief." **Shores v. Spann**, 557 S.W.2d 67, 72 (Tenn. Ct. App. 1977). . . . The record does not establish that such opinions, if made, were fraudulent, or that there was a material misrepresentation as to his likely recovery. Plaintiff freely signed the agreement with the advice of counsel.

No. E1999-02443-COA-R3-CV, 2000 WL 122195, at \*2 (Tenn. Ct. App., filed Jan. 26, 2000).

Turning to the undisputed facts in the present case, we are of the opinion that they establish no duty to disclose on Ms. Bryant's part because all of the material facts allegedly concealed were either known or easily discoverable by plaintiff through the

exercise of ordinary diligence. Before decedent's death, plaintiff was the holder of a durable power of attorney to conduct her affairs, the extent and precise contours of which are not revealed by the record. Regarding the savings account at issue, plaintiff's name was on the account, as he had jointly opened it with decedent and Ms. Bryant. As co-executor of the estate, plaintiff could easily have obtained access to the records of the checking account at issue and the estate account opened by Ms. Bryant. His affidavit establishes that after mediation, his second attorney "*was quickly able to* convince the First Tennessee Bank that I was entitled to all of the checking records because I was the Co-Executor of the Estate." (Emphasis added). Furthermore, before signing the settlement agreement, plaintiff knew that Ms. Bryant "purchased a prepaid funeral," which to him "did not seem right" and "sounded like fraud." He attested that he "refused to participate because I knew [decedent] already had prepaid for her funeral."

Despite this, plaintiff voluntarily signed the settlement agreement, drafted and presented by his own attorney, which was stated to be "in full satisfaction of any and all other rights they may otherwise have had in the assets distributed under the Agreement and against each other for all claims related to [decedent] whether resulting from the Estate or otherwise," and which released Ms. Bryant "of any and all issues arising from the Estate, her actions as an executor for the Estate, her actions as a custodian of funds of the Estate and belonging to [decedent] prior to [her] death, any and all claims he now has, or may have, against [Ms. Bryant] in relation to [decedent or] the Estate." We affirm the judgment of the trial court declining to rescind the settlement agreement on the ground of plaintiff's fraudulent concealment claim.

## C.

There is another reason why the trial court's judgment must be affirmed: the doctrine of accord and satisfaction. As this Court has recently stated,

> An accord and satisfaction is a type of contract and is governed by the law of contracts. *Cole v. Henderson*, 61 Tenn.App. 390, 413, 454 S.W.2d 374, 384 (1969). In *Lytle v. Clopton*, 149 Tenn. 655, 663–664, 261 S.W. 664, 666–667 (1924), the Tennessee Supreme Court stated:
>
> > An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself

-17-

entitled to; and a satisfaction is the execution of such agreement.

* * *

To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.

(quoting 1 C.J. *Accord and Satisfaction* §§ 1 and 16 (1914)). When a debtor clearly indicates that a check is offered upon a condition of satisfaction of a debt, the creditor's endorsement and collection on the check generally operate as an accord and satisfaction. *E.g., Cole v. Henderson*, 61 Tenn.App. 390, 454 S.W.2d 374 (1969), and *Continental Insurance Co. v. Weinstein*, 37 Tenn.App. 596, 267 S.W.2d 521 (1953).

The party asserting the affirmative defense of accord and satisfaction has the burden of proving the defense by a preponderance of the evidence. *Rhea v. Marko Construction Co.*, 652 S.W.2d 332, 335 (Tenn.1983) and *Inland Equipment Co. v. Tennessee Foundry & Machine Co.*, 192 Tenn. 548, 552, 241 S.W.2d 564, 565 (1951).

*In re Estate of Trent*, No. E2015-00198-COA-R3-CV, 2016 WL 286415, at *8-9 (Tenn. Ct. App., filed Jan. 25, 2016) (quoting ***R.J. Betterton Mgmt. Servs., Inc. v. Whittemore***, 733 S.W.2d 880, 882 (Tenn. Ct. App. 1987)).

The General Assembly has defined an accord and satisfaction by the use of an instrument at Tenn. Code Ann. § 47-3-311 (2001), which provides, in pertinent part, as follows:

> (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

> (b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

> (c) Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:

> \*      \*      \*

> (2) The claimant, whether or not an organization, proves that within ninety (90) days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. . . .

> (d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant . . . knew that the instrument was tendered in full satisfaction of the claim.

In this case, Ms. Bryant produced copies of two checks written in the amounts of $5,000 and $3,913.53. The settlement agreement required her to pay plaintiff $5,000 and

"the remainder of the Estate account," which she asserts was $3,913.53 and which plaintiff does not dispute. The $5,000 check bears a notation saying "Settlement of Arrington Estate." Although it does not contain the word "full," plaintiff has never argued that he did not understand it to be Ms. Bryant's intention that the two checks tendered would be a full settlement. Plaintiff voluntarily cashed the two checks. In light of the language agreed upon by the parties in their settlement agreement, which we have already held to be valid, the requirement of subsection 47-3-311(d) quoted above, that plaintiff "knew that the instrument was tendered in full satisfaction of the claim," has been met. Plaintiff did not tender repayment within 90 days, so subsection (c)(2) is not applicable to potentially avoid discharge of the claim. Defendants successfully established the defense of accord and satisfaction to plaintiff's claims against Ms. Bryant.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Anthony Arrington. The case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs below.

_____
CHARLES D. SUSANO, JR., JUDGE